**UNITED STATES of America,
Appellee,**

v.

**Walter MAY, West Pharris May, and
Albert Cornelius Harris, Appellants.**

**No. 19675.**

United States Court of Appeals
Eighth Circuit.

Dec. 30, 1969.

Rehearing Denied Jan. 28, 1970.

Rehearing En Banc Denied Feb. 3, 1970.

Karl F. Lang, St. Louis, Mo., for appellants; Dewey S. Godfrey, St. Louis, Mo., on the brief.

Robert B. Schneider, Asst. U. S. Atty., St. Louis, Mo., for appellee; Daniel Bartlett, Jr., U. S. Atty., St. Louis, Mo., on the brief.

Before BLACKMUN, MEHAFFY and LAY, Circuit Judges.

LAY, Circuit Judge.

This is an appeal from criminal convictions involving the theft of personal property in excess of $100.00 from interstate commerce. The defendants complain that (1) the evidence is insufficient to sustain a conviction since (a) there is no showing that the defendants were connected with the theft from the truck itself and (b) the contradictions of the government witnesses as to the facts in issue raise a reasonable doubt as to their verity; (2) the court erred in the admission into evidence of a price list to establish the value of the stolen property; and (3) the evidence failed to establish that the goods were stolen from interstate commerce. We affirm the convictions.

On Sunday, December 8, 1968, Walter May and West Pharris May accompanied 19-year-old Albert Cornelius Harris to a location near the Motor Freight Company in St. Louis, Missouri. According to Harris, they stopped there because of motor trouble. The automobile was a 1962 Oldsmobile owned by West May. At approximately 10:30 a. m., Walter May was observed by two off-duty police officers with the auto parked at a curb and with the hood raised. The officers drove past the area, made a "U" turn, and observed West May and Harris coming from the fenced-in grounds of the Motor Freight Co. Both officers had earlier observed the two men, later identified as West May and Albert Harris, as they drove up to the scene. West May and Harris at that time were seen on the private grounds of the Motor Freight Co. One of the officers recalled the two men jointly throwing a carton over the fence. The fence was eight feet tall. The carton was described as weighing approximately 50 pounds and containing shotgun shells. It was later discovered that there were five cartons outside the fence, each containing individual boxes of shotgun shells.

The officers testified that after they made the "U" turn, the parked auto belonging to May was turned around and was proceeding slowly in the same direction. At this time the two men who were previously inside the Motor Freight grounds were now outside the fence and approaching the Oldsmobile driven by Walter May. The three were arrested.

An investigation was made and the Motor Freight Co. truck containing the shotgun shells was found with its doors open and six cartons of shells missing. The shells were part of a shipment of 26 cartons that had been routed by Remington Arms in Missouri to a buyer in Kentucky via the Motor Freight Co.

The two officers did not relate their observations in an identical way and it is claimed that their testimony contained many inaccuracies and that they contradicted one another as to what the defendants were doing, as well as to all of the events that ensued after the officers made the "U" turn. Defendants question the officers' ability to actually see from within their auto what they say occurred.

In adversary proceedings it is generally claimed that witnesses for one side or the other dwell upon testimonial inaccuracies. Faulty recollection of a witness often is a cross-examiner's "fools gold" delivered up to a jury to attack the witness' credibility. Appellate judges are too far removed in position to fairly perceive from a cold record the vagaries of the human personality involved in a witness' synthesis of telling the "truth." The jury is the ultimate and only judge of the factual basis of a defendant's guilt. The defendants claim here, as they did in their jury argument that the government's case was based upon a "morass of incredibility." When they lost this argument to the

jury, they foreclosed their only chance of success on that issue. A reviewing court may only direct a motion for acquittal on the sufficiency of the evidence when (1) it may be said as a matter of law that there exists no evidence of guilt whatsoever upon the record or (2) where there exists no substantial evidence from which reasonable men may say that the defendant is guilty beyond a reasonable doubt. Here there was direct evidence of the involvement of both Harris and West May in removing the boxes from the Motor Freight grounds. The truck doors were shown to be open and the shipment of shells in disarray with six cartons missing. Only five cartons were found outside of the fence. (Defendants argue that the missing carton demonstrates that someone else stole the goods.) It is a well established rule that by reason of the jury's findings of guilt, the prosecution is entitled to the benefit of all reasonable inferences from the evidence and that any conflicts in the evidence are to be resolved in favor of the jury verdict. Walter May was shown to have been driving the car and the evidence would support the inference that he was acting as a "lookout" for the other men inside the fence. The trial court properly submitted an instruction on aiding and abetting as to the guilt of Walter May. We hold there was sufficient evidence to submit the issue of guilt to the jury.

■ Defendants additionally assert that the trial court erred in admitting the testimony of the Remington Arms agent as to the value of the carton of shells. Cecil Brotherhood testified that the value of the five cases was $189.90. He based his testimony upon a company wholesale price list. Defendants attack the foundation of such testimony on the ground that the witness was not familiar with the list, did not know how the price list was made up and did not show that the list was current. Although a better foundation might have been laid, we again feel that defense counsel's argument is directed more to the weight of the evidence rather than to its admissi-

bility. Mr. Brotherhood testified that the price list was an "established" one relied upon and used by Remington Arms; he was their branch manager and familiar with the list, having worked for the company for over forty years. The list itself was issued in January 1968, whereas the date of theft was December 1968. Such a time gap is not prejudicial to the proof here. The witness testified that these same prices governed the shipment in question and were in effect on December 6, 1968. Under the circumstances, sufficient foundation was laid for the jury to consider the evidence of value.

■ It is likewise asserted that the prosecution failed to prove that the goods were stolen from interstate commerce. It is urged that the court erred in instructing upon the statute 18 U.S.C. § 659, which reads:

"To establish the interstate * * * commerce character of any shipment in any prosecution under this section the waybill or other shipping document of such shipment shall be prima facie evidence of the place from which and to which such shipment was made." See United States v. Eisenberg, 238 F.2d 143, 144 (2 Cir. 1956).

The court admitted the government's exhibit which was a bill of lading showing the contents of the shipment and the fact that Remington Arms Co. in Missouri was sending the goods in question via Motor Freight Co. to Lexington, Kentucky. The defendants urge that the shipping bill was not prima facie evidence that the goods had entered interstate commerce since the bill itself showed the shipment was to be prepaid and that, in fact, it had not been prepaid. The argument is that until payment the goods had not been irrevocably committed to interstate commerce.

■ The difficulty with defendants' contention is the irrelevant assumption that the manner of payment of a commercial transaction dictates the interstate character of the goods. The true test is whether the goods themselves

**556**

"constitute an interstate * * * shipment." 18 U.S.C. § 659. As the trial court instructed, this is determined when the "property is segregated for interstate shipment and *comes into possession* of those assisting its course in interstate transportation. * * *" (Emphasis ours.) See generally the cases discussed in the Manual on Uniform Jury Instructions on Federal Criminal Cases, 36 F.R. D. 457 et seq. (1965). The goods were delivered from Remington by a local drayage company to Motor Freight Co. on Friday, December 6, 1968. Even though prepayment by the consignee had not actually taken place at the time of the theft, this circumstance does not destroy the fact that the goods *even when delivered to the local trucking company* entered into the "flow of commerce." See Wolk v. United States, 94 F.2d 310 (8 Cir. 1938). Whether or not that "flow" was irrevocable is beyond materiality.

Judgment affirmed.