STATE of North Dakota, Plaintiff
and Appellee,

v.

Merle Gene ALLEN, Defendant
and Appellant.

Crim. No. 524.

Supreme Court of North Dakota.

Dec. 17, 1975.

Charles J. Gilje, State's Atty., for plaintiff and appellee.

Mackenzie & Jungroth, Jamestown, for defendant and appellant; argued by James R. Jungroth, Jamestown.

ERICKSTAD, Chief Justice.

Merle Gene Allen (hereinafter Gene) appeals from a jury verdict of guilty and from the judgment on conviction of the District Court of Stutsman County finding him guilty of burglary. He asks that his conviction be reversed or that a new trial be granted.

At the close of the prosecution's case, Gene moved for a judgment of acquittal pursuant to Rule 29(a), N.D.R.Crim.P., which` motion was denied. He did not renew his motion after he had presented his case nor did he petition the trial court for a new trial.

Gene asserts on appeal that his motion for judgment of acquittal at the close of the prosecution's case should have been granted. In light of that assertion, let us review the development of Rule 29, N.D.R.Crim.P.

Nearly twenty-five years ago, it was declared that a "general motion for a judgment of acquittal is a proper method to challenge the sufficiency of the evidence." 4 Barron, Federal Practice and Procedure: Criminal § 2221, p. 233 (1951).

"The motion for judgment of acquittal at the close of the government's case implements 'the requirement that the prosecution must establish a prima facie case by its own evidence before the defendant may be put to his defense' [*Cephus v. United States*, 117 U.S.App.D.C. 15, 324 F.2d 893, 895 (1963)]." 2 Wright and Miller, Federal Practice and Procedure: Criminal § 462, p. 245 (1969).

If the evidence is insufficient to sustain a conviction, the trial court after the evidence on either side is closed on its own motion or on motion of a defendant "shall order the entry of judgment of acquittal." Rule 29(a), N.D.R.Crim.P. If the motion is properly made by the defendant,

". . . the trial judge may not, be [*sic*] deferring decision on the defendant's motion, allow sufficient evidence to be supplied by the defense or by the prosecution on rebuttal. If the evidence is sufficient when the prosecution rests, as it is in the instant case, any error in failing to rule promptly on the motion is

harmless. See *Cooper v. United States*, 5 Cir. 1963, 321 F.2d 274, 277." *United States v. Guinn*, 454 F.2d 29, 33 (5th Cir. 1972), *cert. denied*, 407 U.S. 911, 92 S.Ct. 2437, 32 L.Ed.2d 685.

■ The standard for the trial judge to use in ruling upon a motion for judgment of acquittal has been articulated in three recent cases.

" 'A reviewing court may only direct a motion for acquittal on the sufficiency of the evidence when (1) it may be said as a matter of law that there exists no evidence of guilt whatsoever upon the record or (2) where there exists no substantial evidence from which reasonable men may say that the defendant is guilty beyond a reasonable doubt.' [*United States v. May*, 419 F.2d 553, 555 (8th Cir. 1969).]" *United States v. McIntyre*, 467 F.2d 274, 276 (8th Cir. 1972), *cert. denied*, 410 U.S. 911, 93 S.Ct. 972, 35 L.Ed.2d 274.

"In this jurisdiction, '[a] motion for acquittal must be granted when the evidence, viewed in the light most favorable to the Government, is such that a reasonable juror *must* have a reasonable doubt as to the existence of any of the essential elements of the crime.' [Citations omitted.] If the evidence is such that a reasonable man may have a reasonable doubt as to the defendant's guilt, the case should go to the jury. [Citations omitted.] On the other hand, the trial judge should not allow the case to go to the jury if the evidence is such as to permit the jury to merely conjecture or to speculate as to defendant's guilt." [Emphasis in original.] *United States v. Bethea*, 143 U.S.App.D.C. 68, 442 F.2d 790, 792 (1971).

"A motion for a judgment of acquittal enjoins the trial judge to 'determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt.' [*Curley v. United States*, 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232 (1947), *cert. denied*, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850.] For this purpose, the judge must 'assume the truth of the Government's evidence and give the Government the benefit of all legitimate inferences to be drawn therefrom.' [*Id.*] If the evidence, so measured at the point in the prosecution to which the motion is properly addressed, portends to establish guilt beyond a reasonable doubt, it is for the jury to make the decision as to whether it actually does." *Powell v. United States*, 135 U.S. App.D.C. 254, 418 F.2d 470, 473 (1969).

The trial judge must determine whether, "[v]iewing cumulatively the totality of the evidentiary items touching on the issue, the jury could reasonably have inferred . . . ." guilt. *Id.* *See generally* 8 Moore's Federal Practice—Criminal Rules, ¶ 29.06 (2d ed. 1975).

In *State v. Neset*, a 1974 decision of our court involving a procedural scenario identical to the instant case, we said:

"With recent precedent we conclude that a review of sufficiency of the evidence is not precluded, even though the instant appeal is from the judgment only.

'The touchstones hereafter for an effective appeal on any proper issue should be (1) that the matter has been appropriately raised in the trial court so that the trial court can intelligently rule on it, and (2) that there be a valid appeal from the judgment. Any other traps for the unwary on the road to the appellate courthouse should be eliminated.' *State v. Haakenson*, 213 N.W.2d 394 at 399 (N.D.1973)." *State v. Neset*, 216 N.W.2d 285, 286 (N.D.1974).

■ Consistent with *Haakenson* and *Neset*, we conclude that mere nonrenewal of a motion for judgment of acquittal at the close of all evidence does not preclude appellate review of the sufficiency of the evidence where appeal is taken from the judgment and sentence of the court. In *Neset* we analyzed all the evidence that had been

presented to the trial court. Neset admitted that he had been driving the vehicle upon a highway, one of two essential elements to the charge of driving a vehicle while under the influence of intoxicating liquor. We found therein that the circumstantial evidence was sufficient to establish the second element, that while operating the motor vehicle he was under the influence of intoxicating liquor.

We reiterate our procedural ruling in *Neset* that a motion for judgment of acquittal at the close of the prosecution's case in chief preserves the issue of insufficiency of evidence for appellate review, even without a renewal of the motion at the close of all evidence.

A concomitant issue, which we did not explicitly consider in *Neset*, remains. We must determine whether our review is limited to the record at the time that the motion is made and denied or whether we may consider the entire record. More specifically, does the defendant whose motion for judgment of acquittal at the close of the prosecution's case in chief is denied "waive" his right to appellate review of the denial as of that stage of the proceedings by submitting testimony in his defense?

The United States Supreme Court has indicated that

> "The reviewing courts . . . can seek corroborative evidence in the proof of both parties where . . . the defendant introduces evidence in his own behalf after his motion for acquittal has been overruled. *Cf. Bogk v. Gassert,* 149 U.S. 17, 13 S.Ct. 738, 37 L.Ed. 631 [1893].[1]

> [1] By introducing evidence, the defendant waives his objections to the denial of his motion to acquit. [Citations omitted.] His proof may lay the foundation for otherwise inadmissible evidence in the Government's initial presentation, *Ladrey v. United States,* 81 U.S.App.D.C. 127, 155 F.2d 417 [1946], or provide corroboration for essential elements of the Government's case, *United States v. Goldstein,* 2 Cir., 168 F.2d 666 [1948]; *Ercoli v. United States,* 76 U.S.App.D.C. 360, 131 F.2d 354 [1942]." *United States v. Calderon,* 348 U.S. 160, 164, 75 S.Ct. 186, 188, 99 L.Ed. 202 (1954).

Eighteen years later, Justice Douglas, who had dissented without opinion in *Calderon,* noted a conflict among the courts of appeals on the waiver issue and dissented to a denial of certiorari. *Maffei v. United States,* 450 F.2d 928 (6th Cir. 1971), *cert. denied,* 406 U.S. 938, 92 S.Ct. 1789, 32 L.Ed.2d 138. Since *Calderon* a majority of the federal courts of appeals have adopted the waiver doctrine. *Maffei v. United States, supra,* 406 U.S. 938, 92 S.Ct. 1789, 32 L.Ed.2d 138 (Justice Douglas dissenting to a denial of certiorari) (see the cases cited therein); 8 Moore's Federal Practice—Criminal Rules, ¶ 29.05 (2d ed. 1975).

The waiver doctrine was criticized in a student comment, "The Motion for Acquittal: A Neglected Safeguard," 70 Yale L.J. 1151 (1961), and has been assailed in at least three federal circuits. *United States v. Bethea, supra,* 442 F.2d at 792, n. 4, *Powell v. United States, supra,* 418 F.2d at 473, n. 9, and *Cephus v. United States,* 117 U.S.App. D.C. 15, 324 F.2d 893, 895–896 (D.C.Cir. 1963); *United States v. Rizzo,* 416 F.2d 734, 736, n. 3 (7th Cir. 1969); *United States v. Burton,* 472 F.2d 757, 763 (8th Cir. 1973); and *United States v. McIntyre, supra,* 467 F.2d at 276, n. 1. Only the Seventh Circuit rejected the waiver doctrine without equivocation by agreeing with a defendant's contention "that, in reviewing the denial of the motion for acquittal, this Court must consider the record as it existed when the motion was made, at the end of the Government's case in chief." *United States v. Rizzo, supra,* 416 F.2d at 736, n. 3.

Since its decisions in *Burton* and *McIntyre* the Eighth Circuit Court of Appeals has adhered to the waiver doctrine. In *United States v. Geelan,* 509 F.2d 737 (8th Cir. 1974), *cert. denied,* 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666, the court declared, "The defendants opted at trial to present evidence on their own behalf, and we are therefore permitted to examine the record as a whole. [Citations omitted.]" 509 F.2d at 742; *accord, United States v. Wetzel,* 514 F.2d 175 (8th Cir. 1975).

In addition to the cases listed in Justice Douglas's dissent to the denial of certiorari in *United States v. Maffei, supra,* 406 U.S. 938, 92 S.Ct. 1789, 32 L.Ed.2d 138, as adopting the waiver doctrine, see the following: *United States v. Guerrero,* 517 F.2d 528, 530 (10th Cir. 1975); *United States v. Parr,* 516 F.2d 458, 464, n. 11 (5th Cir. 1975); and *United States v. Newsome,* 444 F.2d 109, 110 (6th Cir. 1971), *cert. denied,* 404 U.S. 862, 92 S.Ct. 164, 30 L.Ed.2d 105–106.

Prior to the adoption by this court of our Rules of Criminal Procedure, a motion for an advised verdict of acquittal raised the issue of sufficiency of the evidence, but the order denying the motion was not appealable. *State v. Haakenson,* 213 N.W.2d 394, 396 (N.D.1973), citing *State v. Johnson,* 88 N.W.2d 209 (N.D.1958); Section 29–21–37, N.D.C.C. (superseded by Rule 29, N.D.R. Crim.P.). The considerations are somewhat different under Rule 29, N.D.R.Crim.P., since under Section 29–21–37, N.D.C.C. (superseded), the jurors were not bound by the judge's advice,[1] but a defendant was put to a difficult choice—whether to present his own case or to rest at the close of the prosecution's case in chief—under previous law, as one is under the present rules.

Such a difficult choice has been condoned by the United States Supreme Court through Justice Harlan in a case where the defendant claimed his privilege against self-incrimination during cross-examination on matters reasonably related to his testimony on direct examination:

" . . [A] defendant whose motion for acquittal at the close of the Government's case is denied must decide whether to stand on his motion or put on a defense, with the risk that in so doing he will bolster the Government case enough for it to support a verdict of guilty. *E. g., United States v. Calderon,* 348 U.S. 160, 164 and n. 1, 75 S.Ct. 186, 188, 99 L.Ed. 202 (1954); 2 C. Wright and Miller, Federal Practice and Procedure § 463 (1969); *cf.* American Bar Association, Project on Standards for Criminal Justice, Trial by Jury 107–108 (Approved Draft, 1968). But see Comment, The Motion for Acquittal: A Neglected Safeguard, 70 Yale L.J. 1151 (1961); *cf. Cephus v. United States,* 117 U.S.App.D.C. 15, 324 F.2d 893 (1963). . . ."

*McGautha v. California,* 402 U.S. 183, 215–216, 91 S.Ct. 1454, 1471, 28 L.Ed.2d 711 (1971) (dictum), *vacated on other grounds,* 408 U.S. 941, 92 S.Ct. 2873, 33 L.Ed.2d 767 (1972).

In accordance with the majority of the federal courts of appeals and with this court's decisions in *State v. Neset, supra,* 216 N.W.2d 285, and *State v. Berger,* 234 N.W.2d 6 (N.D.1975), we conclude that by presenting evidence after a motion for judgment of acquittal is denied at the close of the prosecution's case in chief, a defendant permits this court to review the entire record to determine whether sufficient evidence exists to sustain the verdict.

The undisputed facts are essentially these. Sometime between January 20, 1974, and March 10, 1974, approximately 2,000 bushels of durum were stolen from a grain bin, one of five located near fields farmed by Clifford Bellon but apart from any farmstead. Durum was removed from the bin both at its door and from an opening cut in the shape of an inverted "U" about ten feet above the floor of the bin. After discovery of the break-in of the bin, Bellon removed the remainder of his durum from the bin and salvaged much of the grain that had spilled onto the ground by shoveling it into a grain auger and elevating it into a truck. Bellon stored the spilled durum separately from the durum which had been removed from the bin.

---

1. "29–21–37. Court may advise jury to acquit.—If, at any time after the evidence on either side is closed, the court deems it insufficient to warrant a conviction, it may advise the jury to acquit the defendant, but the jurors are not bound by the advice, nor can the court, for any cause, prevent the jury from giving a verdict." N.D.C.C. (1960) (Superseded by Rule 29, N.D.R. Crim.P.)

During investigation of the crime, Sheriff Gutzwiller ascertained that Gene had sold durum shortly after the theft had been discovered. The grain sale which had aroused the sheriff's suspicion was of durum which had been delivered to the Jamestown Terminal by Melland's, Inc., at the direction of Gene Allen. On January 30, 1974, Gene had rented the tandem-axle truck under an agreement that it be returned to Melland's not later than February 2, 1974. While in Gene's possession the truck broke down. It was towed from Gene's farmstead to Jamestown and repaired by Melland's. One motor mount bolt was missing and another was broken, a part of which remained in the bell housing. That part was removed, marked, and saved by Melland's for possible use in an action to recover damages from Gene.

After the truck had been repaired, Melland's drove it to the Jamestown Terminal. Grain sold from the truck consisted of 309 bushels of durum weighing 59 pounds per bushel with 9½% dockage. The truck had a 500–bushel-capacity box.

When the sheriff contacted Melland's to determine if Melland's had rented a truck to Gene, Melland's gave the broken bolt to him. Subsequently, the sheriff admonished Bellon to watch for the other part of the bolt. Around April 19, 1974, Bellon cleaned the spilled grain which had been salvaged. During the mechanical cleaning operation part of a bolt was separated from the durum. Bellon called an employee of his to witness retrieval and marking of the bolt.

After Gene's preliminary hearing the sheriff sent both parts of the bolt to the Federal Bureau of Investigation. A special agent from the tool marks fractures unit of the FBI laboratory recounted his examination of the two parts and testified that "the specimens . . . were fractured from and were at one time a single piece."

Among other relevant facts were the following. The average quality of the durum which had been harvested in 1973 from the fields owned by Bellon near the binsite and hauled to a Dickey, North Dakota, elevator that fall was 58 pounds per bushel with 5% dockage. The dockage had ranged from 2% to 12%. Grain harvested from the same fields and retrieved from the bin and binsite averaged 58 pounds with 3% dockage after it had been cleaned.

Gene resided on his farm within a few miles of the bins. He testified that he had raised 78 acres of durum in 1973 and had sold two truckloads in October 1973; one truckload weighed 58 pounds per bushel with 7% dockage, while the other weighed 57 pounds per bushel with 12% dockage. By volume there was 9.3% dockage.

There was no showing that Gene had sold or stored any durum other than the 309 bushels from the disabled truck during the time period involved or that anyone else had or had not rented the truck from Melland's during the period from January 20 to March 10, 1974.

Both Gene and the State agree that this triad of circumstances is crucial to determination of guilt or innocence: (1) the truck was disabled while it was in Gene's possession; (2) the part of the broken motor mount bolt that was outside the bell housing was found under circumstances indicating that it had been near the binsite; and (3) the durum sold by Gene from the disabled truck was of a quality similar to durum harvested in 1973 by Bellon in his fields near the bins.

Gene contends that the broken motor mount bolt could have been at the scene from an earlier time and that the truck could have remained operable until the second bolt fell out while he was loading durum at his farmstead. The State's premise is that the truck broke down at the scene of the burglary and that Gene towed it to his farm.

■ This court has had frequent occasions to review convictions based on circumstantial evidence. We have indicated that "a verdict based on circumstantial evidence carries the same presumption of correctness

as other verdicts, and will not be disturbed unless wholly unwarranted, even though the evidence is weak and unsatisfactory to the appellate court." *State v. Carroll,* 123 N.W.2d 659, 669 (N.D.1963), quoting from 24A C.J.S. Criminal Law § 1882 (1962); *accord, State v. DePriest,* 206 N.W.2d 859, 865 (N.D.1973).

■ We have noted the different perspectives of the trial court and the appellate court as to circumstantial evidence:

"In *State v. Miller,* 202 N.W.2d 673 (N.D.1972); *State v. Champagne,* 198 N.W.2d 218 (N.D.1972), and *State v. Carroll,* 123 N.W.2d 659 (N.D.1963), we pointed out that the rule as to circumstantial evidence, at the trial level, is that such evidence must be conclusive and must exclude every reasonable hypothesis of innocence, but at the appellate level we do not substitute our judgment for that of the jury or trial court where the evidence is conflicting, if one of the conflicting inferences reasonably tends to prove guilt and fairly warrants a conviction." *State v. Kaloustian,* 212 N.W.2d 843, 845 (N.D.1973); *accord, State v. Fuchs,* 219 N.W.2d 842, 846 (N.D.1974); *State v. Neset,* 216 N.W.2d 285, 287 (N.D.1974); and *State v. Steele,* 211 N.W.2d 855, 870 (N.D.1973).

■ Since the jury must weigh the evidence and determine the credibility of the witnesses in its role of determining guilt or innocence, we will reverse its decision only if the record presents no substantial evidence to support the verdict. In cases involving circumstantial evidence, our more specific role is merely to review the record to determine if there is competent evidence from which the jury could draw an inference reasonably tending to prove guilt and fairly warranting a conviction. We conclude from the totality of the circumstances in this case that such an inference was available.

■ The following facts were established during the prosecution's case in chief: the time period from January 20 to March 10, 1974, during which the burglary of the granary and the theft of the durum must have occurred; the proximity of Gene's farmstead to the binsite; Gene's renting the truck from Melland's on January 30 and his retaining it until March 6, when it was towed into Jamestown; the disabling of the truck during the time that Gene possessed it; the probability that the truck was disabled concurrent with the motor mount breaking; the retrieval of the two broken parts of the bolt, one from the bell housing of the truck and the other under circumstances indicating that it had been near the bin; the expert testimony that both parts were at one time one piece; and the presence in the truck of durum which was of a quality similar to that of durum harvested by Bellon in 1973, some of which was stored in the bin that was burglarized. All of the preceding facts were in evidence at the close of the prosecution's case in chief, thus allowing the judge to deny the motion for judgment of acquittal.

Under cross-examination Gene testified that he had during March or April 1974 contracted with the Garvey Elevator Company for the delivery of durum on May 15, 1974; that he did not have any durum to deliver, but that he expected to buy enough in a falling market to cover the contract; and that he did not deliver any durum under that contract. In addition, he testified that he contracted with the Cleveland Elevator Company for delivery of grain; that he had asked for an advance payment but was unable to get it; and that grain delivered under that contract was from his 1974 crop. The jury could have inferred from Gene's desire for an advance payment a financial difficulty motivating the burglary, especially in light of his testimony that his 1973 durum crop resulted in a "[r]eal poor yield." *Cf. State v. Bragg,* 221 N.W.2d 793, 802 (N.D.1974).

While Gene introduced testimony indicating that a snowstorm during the weekend of March 2–3, 1974, had rendered travel difficult in the area, that nothing out of the

ordinary around the bins had been noticed by snowmobile riders on March 2, and that he and his wife had loaded the 309 bushels from his own grain bin, the jurors—not this court—determine the weight and credibility to be given the testimony. As we cannot substitute our judgment for theirs, we conclude that there is sufficient evidence to sustain the verdict since the facts raise a reasonable inference of Gene's guilt.

Having determined that the evidence is sufficient to support the verdict, we must also decide whether a number of questions propounded by the state's attorney improperly affected the jury and whether certain rebuttal testimony by a witness for the prosecution was improperly admitted over objection and substantially affected the outcome of the trial.

Gene asserts that the cumulative effect of a number of incidents during trial amounts to error sufficiently prejudicial to require reversal. Those incidents follow: (1) a voluntary statement by an employee of Melland's that the check written by Gene for the rental of the vehicle was not good; (2) an inquiry by the state's attorney of an employee of Melland's as to whether "the phone was ringing at the other end" when he attempted to call Gene; (3) an inquiry of the defendant by the state's attorney as to whether Gene withheld social security taxes when he paid an employee with part of the proceeds from a wheat sale; and (4) the introduction of three truck rental agreements by the state's attorney without relevance to the case except for impeachment purposes.

 In our review of trial court error, we are guided by Rule 52, N.D.R.Crim.P., which defines "harmless" and "obvious" error. As an appellate court, we disregard error which does not affect substantial rights (harmless error), while we must consider errors objected to at trial that were prejudicial (reversible error) and errors "so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time" (obvious

error). Commentary, Rule 52, N.D.R. Crim.P. Rule 52 reflects our judicial statements that a defendant is entitled to a fair trial but not necessarily to a perfect trial. *State v. Marmon*, 154 N.W.2d 55, 64 (N.D. 1967); *State v. Manning*, 134 N.W.2d 91, 99 (N.D.1965).

 We must consider the entire record and the probable effect of the actions alleged to be error in light of all the evidence in order to determine whether substantial rights were affected. *State v. Johnson*, 231 N.W.2d 180, 185 (N.D.1975). In so doing, we are cognizant that among the material factors to consider is "the relation of the error asserted to casting the balance for decision on the case as a whole." *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). The errors alleged here do not involve Gene's constitutional rights, so it must appear that prejudice occurred, that substantial injury resulted to his case, and that a different decision probably would have resulted absent the errors before we can reverse the jury's verdict. *State v. Marmon, supra*, 154 N.W.2d at 64.

 Since the errors herein alleged do not affect Gene's constitutional rights, nor do they appear to be of such a character that prejudice normally results or are otherwise obviously "obnoxious to fundamental criminal procedure" (*State v. Manning, supra*, 134 N.W.2d at 99), the standard we must apply is whether in all probability the errors (if in fact they are errors) affected the jury verdict. *State v. Marmon, supra*, 154 N.W.2d at 64. This conclusion we do not reach, considering the entire record, the nature of the errors alleged, and the trial judge's instruction to the jury that "certain questions and answers . . . stricken from the record . . . are not evidence in this case and you must not consider them as such nor give them any weight whatever in arriving at your verdict."

We note that defense counsel objected to the errors numbered (1) through (3), *supra*, and that he questioned the relevancy of the

truck rental agreements. As to each of the incidents, therefore, he preserved appellate review under the two touchstones specified in *State v. Haakenson, supra*, 312 N.W.2d at 399. While we do not believe that the cumulative effect of the incidents objected to was sufficient to prejudice the jury or to affect its verdict, the issue of cumulative effect would be tactically better raised to the trial judge through a motion for new trial. He, of course, is in a better position to perceive the setting of the incidents, including noticeable effects on the jurors, than are we.

■ Gene asserts that the truck rental agreements which occurred after March 2, 1974, and which indicated the dates of truck rentals and the mileage incurred by Gene, were not relevant to the case. Since not all the missing durum had been accounted for, the truck rentals may have illustrated circumstances consistent with guilt. *Cf. State v. Manning, supra*, 134 N.W.2d at 100. Gene had sufficient opportunity to explain them, both when they were introduced during his cross-examination by the state's attorney and when his own counsel conducted redirect examination. In addition, we do not believe that the rental agreements raised collateral issues which confused the jury to Gene's prejudice. Accordingly, we do not find a lack of relevance or a prejudicial effect in their admission.

■ Finally, there is Gene's contention that testimony of an insurance investigator who inspected Gene's own bins on April 10 and found them all essentially empty of wheat or durum was irrelevant. The purpose specified by the prosecutor seems sufficient.

"MR. GILJE: He is called as a rebuttal witness and we are rebutting testimony given by the defendant that he sold grain he had in his bins on his farm on April 26th, and this witness is called to rebut that. It will show whether or not the defendant's story is true."

By testifying, Gene inserted his own credibility as an issue. His sale of wheat on April 26 was raised during direct examination and discussed further during cross-examination. The admissibility of evidence "shall be governed, except when a statute or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of this state in light of reason and experience." Rule 26, N.D.R.Crim.P. We do not find in the rebuttal testimony a lack of relevance or a prejudicial effect that would allow us to overturn the trial court's rulings. Furthermore, the jurors were free to assign whatever weight they deemed appropriate to the testimony.

For the reasons stated in this opinion the verdict of the jury and the judgment on conviction of the District Court are affirmed.

SAND, VOGEL, PAULSON and PEDERSON, JJ., concur.