STATE of North Dakota, Plaintiff
and Appellee,

v.

John H. WILSON, Defendant
and Appellant.

Crim. No. 629.

Supreme Court of North Dakota.

June 28, 1978.

Lewis C. Jorgenson, Asst. State's Atty., Devils Lake, for plaintiff and appellee.

David Garcia, Devils Lake, for defendant and appellant.

ERICKSTAD, Chief Justice.

The defendant, John H. Wilson, was charged in an Information dated October 10, 1977, with having committed the offense of burglary in violation of Section 12.1–22–02 of the North Dakota Century Code. As a result of a jury trial which was held on the first day of November, 1977, Wilson was found guilty and thereafter on November 10, 1977, was sentenced to imprisonment in the state penitentiary for a period of two years. The sentence was dated back 22 days to give credit for confinement prior to the date of sentencing.

Wilson appeals from the order of the district court denying his motion for a new trial. The points of his motion will later be discussed herein in the order in which they were asserted.

At the trial the State submitted evidence through Mr. Kenneth Feldner, a detective with the police department of the city of Devils Lake. He testified that he received a call at about 7:08 a. m. on June 30, 1977, to investigate a matter at the Ranch [1] and arrived there at about 7:15 a. m. Feldner said that he first observed from marks of a bar on the front door of the Ranch that someone had attempted to enter the front door and apparently had been unsuccessful, that he then continued to investigate and discovered that a storm window had been removed near the southeast corner of the Ranch and that a bar had been used to pry up the bottom window and that in this process the screws were pulled out of the lock so that the bottom window could be opened completely. He said that he was then informed by a Mr. Anderson, whom he believed to be a part owner of the Ranch, that certain items of jewelry were missing from a cabinet which rested within the Ranch near the front door. He further said that a list of the items which were believed to be missing was given to him and that subsequently the Devils Lake police received a telephone call from the police of the city of Kansas City, Missouri, to the effect that the Kansas City police had arrested Wilson while he was in possession of some of the missing turquoise jewelry.

Mr. Ronald Anderson of Crary, North Dakota, testified that he is owner and manager of the Ranch and had been so for the last three years and that during the last two years he had been in the business of selling turquoise jewelry at the Ranch. He further testified that he received a call on the 30th of June, 1977, from someone at the Ranch to the effect that there had been a break in, and that when he went to the Ranch to investigate he discovered that approximately "140 rings, 24 bracelets, five belt buckles, one squash blossom, and eight necklaces" were missing. He said that the missing jewelry was of the approximate value of $15,000 based upon its wholesale cost.

The evidence which Wilson considers crucial is that which was submitted through the testimony of officer Stephen L. Kramer of the police department of Kansas City, Missouri. Kramer said that as a member of the vice division of the narcotics squad of Kansas City he and his partner, Douglas Clark, received a phone call from an informant at approximately 2:30 in the afternoon on the 8th day of July, 1977. He said that as a result thereof, the informant arranged for him and his partner to meet someone who wished to sell stolen jewelry and that he and his partner did meet Wilson and another person by the name of Lowell Robertson in room 235 of the Holiday Inn located at First and Broadway in Kansas City, Missouri, at about 10:00 that evening. He said that Wilson then asked them if they were interested in buying some stolen turquoise and when they said they were interested, he opened his attache case and showed them some trays of turquoise jewelry and a cardboard box which contained bracelets and informed them that these items were worth about $13,000 and that he only wanted $5,000 for them. Kramer testified that when he told Wilson that they would have to resell the jewelry in a place other than from where it was stolen and asked Wilson where he got the jewelry, Wilson said that he got it at the Ranch in Devils Lake, North Dakota.

The argument made by Wilson in his brief and in oral argument is that on cross-examination Kramer said that he wrote in his report that Wilson said: "The jewelry came from the burglary in the Ranch in Devils Lake, North Dakota."

Wilson asserts that Kramer merely agreed with whomever was examining him at the time, for on redirect examination, when Kramer was asked by the assistant state's attorney if Wilson said: "We got it or it came from the Ranch?" Kramer said that "He said at the time—we got it from the burglary in the Ranch."

Wilson asserts, and it is true, that the notes which officer Kramer made following the meeting with Wilson and Wilson's ar-

1. The Ranch is a supper club located just outside the city of Devils Lake.

rest merely state that: "The jewelry was taken in a burglary on the Ranch in Devils Lake, North Dakota."

Wilson further points out that Kramer's notes also state that Wilson said: "He received the jewelry from two other people in payment of a drug debt."

When questioned further by counsel for Wilson, Kramer answered that Wilson made more than one statement concerning the source of the jewelry and that he merely indicated in his notes the sources indicated by Wilson.

Kramer's partner, officer Clark, testified to the effect that Wilson said he got the jewelry in North Dakota from a place called the Ranch. Clark also confirmed that Wilson also said that he received it from two people. Officer Clark identified the jewelry which was submitted in evidence as the jewelry which Wilson displayed to him and officer Kramer in Kansas City. The jewelry had earlier been identified in court by Anderson as the jewelry stolen from the Ranch.

When the court refused to permit the State to call a person as a witness whose name had not been endorsed upon the Information until the morning of the trial, the defendant moved for judgment of acquittal of the burglary charge on the grounds that the evidence was insufficient to sustain a conviction of such an offense. The State resisted the motion and the court denied it. When the motion was denied, although the defendant did not take the stand, two witnesses were called who, it is argued, established the basis for an alibi.

The first witness called on behalf of the defendant was Robert Dean Campbell. He testified that he worked with Wilson on a cement project approximately a quarter of a mile off Belmont Road in south Grand Forks, North Dakota, from 6:00 in the morning until 6:00 at night on the 29th of June. He further testified that he called Wilson at about 5:30 the following morning and requested a ride with him and that Wilson picked him up at 6:00 that morning and drove him to work and that they worked together then until 5:00 or 5:30 in the afternoon of the 30th of June, 1977.

The other alibi witness was Mrs. DeLila Wilson, defendant Wilson's former wife. Mrs. Wilson testified that Wilson visited in her home with her and her children from 6:30 to 11:30 in the evening on June 29, 1977. She said that when she went to bed at 11:30 he had fallen asleep on the couch. She further testified that she next saw him the next evening sometime between 6:00 and 7:00.

Following this testimony, the State was permitted to call Mr. Philip Nilsen, the witness whom it had previously been prohibited from calling, as a rebuttal witness. Mr. Nilsen testified that he recognized Wilson as the person he had seen at the Ranch during the noon hour or shortly thereafter on June 29, 1977.

At the time Nilsen identified Wilson in court, Wilson had an afro-type hairstyle. Mr. Campbell on surrebuttal testified to the effect that when he and Wilson were employed together on the 29th of June and for some time thereafter, Wilson had straight hair, not curly hair. A photograph of Wilson with straight hair was later received in the evidence as being a photograph of Wilson as Campbell remembered him as of that time.

Wilson's first contention on appeal, which was his first point in his motion for new trial, is that his motion for judgment of acquittal at the close of the State's case should have been granted on the ground that the evidence was not sufficient at that time to support a conviction of the crime of burglary. He bases this contention upon his claim that the evidence was not sufficient to show exclusive possession of stolen goods to support an inference of burglary. He asserts that the evidence is clear that he received the stolen jewelry from a third party and that this is supported by the testimony and notes of officer Kramer, who arrested him in Kansas City before he was transported to North Dakota to stand trial.

For two reasons we believe that the contention that it was error not to grant the motion for acquittal at the close of the

State's case is without merit: (1) "[O]n a motion for judgment of acquittal under Rule 29, N.D.R.Crim.P., the trial court is required to approach the evidence from a standpoint most favorable to the prosecution, and is required to assume the truth of the evidence offered by the prosecution. If on this basis there is substantial evidence justifying an inference of guilt the motion for judgment of acquittal must be denied. 2 Wright & Miller Federal Practice and Procedure, § 553, p. 486." *State v. Holy Bull,* 238 N.W.2d 52, 57 (N.D.1975). (2) "By presenting evidence after a motion for judgment of acquittal is denied at the close of the prosecution's case in chief, a defendant permits this court to review the entire record to determine whether sufficient evidence exists to sustain the verdict." *State v. Allen,* 237 N.W.2d 154, 156 (N.D.1975).

Considering the evidence in this case, in light of those two principles of law, we conclude that there is no basis in Wilson's first contention for granting a motion for new trial.

Wilson's second contention on appeal is that the court erred in not granting his motion for judgment of acquittal at the conclusion of the case upon the same reasons asserted in support of his first contention. He additionally asserts that his evidence of alibi was unrebutted, thus was established and accordingly constitutes a complete, legitimate, and effective defense, precluding the possibility of guilt. He refers us to 21 Am.Jur.2d Criminal Law, § 136.

In the paragraph preceding Wilson's reference in his source of the law, we note the following:

"The literal significance of the word 'alibi' is 'elsewhere'; as used in criminal law, it indicates that line of proof by which an accused undertakes to show that because he was not at the scene of the crime at the time of its commission, having been at another place at the time, he could not have committed the crime. In other words, by an alibi the accused attempts to prove that he was at a place so distant that his participation in the crime was impossible. To be successful, his alibi must cover the entire time when his presence was required for accomplishment of the crime. To establish an alibi, the accused must show that he was at another specified place at the time the crime was committed, thus making it impossible for him to have been at the scene of the crime. It is not enough for the accused to say that he was not at the scene and must therefore have been elsewhere. The latter statement does not constitute an alibi. And since an alibi derives its potency as a defense from the fact that it involves the physical impossibility of the accused's guilt, *a purported alibi which leaves it possible for the accused to be the guilty person is no alibi at all.*" (Emphasis added.) 21 Am.Jur.2d, § 136, at 205–06.

Applying the principle that for an alibi to be effective it must have been impossible for the accused to have committed the crime because he was, at the time of the crime, at another place, we believe that the jury could very reasonably have concluded from the evidence in this case and particularly after analyzing the testimony of the two alibi witnesses in this case, that it was not impossible for the defendant to have committed the crime even if the testimony of the two alibi witnesses was accepted at face value. In addition we are not convinced that the jury is required to accept the testimony of the two alibi witnesses or, for that matter, the testimony of any witness, for it is the province of the jury to determine the credibility of witnesses and the weight to be given their testimony. *Belinskey v. Hansen,* 261 N.W.2d 390, 395 (N.D.1977); *State v. Williams,* 150 N.W.2d 844, 849 (N.D.1967); *State v. Little Bear,* 130 N.W.2d 83, 86 (N.D.1964). *See also State v. Olmstead,* 261 N.W.2d 880, 885 (N.D.1978).

In the instant case, assuming the evidence of the two alibi witnesses to be true for purposes of discussion, we note that the burglary must have taken place sometime after the closing of the Ranch at approximately 1:00 in the morning of June the 30th

and when it was discovered upon opening the Ranch sometime around 7:00 in the morning of the same day. Mrs. Wilson did not see Wilson from 11:30 p.m. on the evening of the 29th of June until the evening of the 30th. Campbell did not see or have communication with Wilson from the time of quitting work at about 6:00 p.m. on the 29th of June until the time he communicated with him by telephone at 5:30 a.m. on the 30th of June. The distance between Grand Forks and the Ranch which is located near the city of Devils Lake is less than 100 miles. Within the foregoing time frame it was possible for Wilson to have traveled that distance and to have broken into the Ranch and stolen the jewelry.

■ Wilson's third contention on appeal relates to his third point in his motion for new trial which is to the effect that the verdict is contrary to the weight of the evidence and presumably, therefore, should be set aside and a new trial granted. His view is that the jury convicted him on the basis of his possession of the stolen goods and upon that evidence alone. He asserts that there was no evidence before the jury connecting him to the entry of the Ranch supper club and the taking of the property therefrom except the evidence of his possession of the stolen goods sometime thereafter and some distance later. He further asserts that there is negative evidence to the effect that he received the stolen goods from other persons and that there is positive evidence of an alibi which went unchallenged and unrebutted.

What Wilson seems to be asserting is that there must have been eyewitness testimony or other more graphic evidence of his entry into the supper club at the time of the burglary and his departure therefrom with the stolen goods before a jury could conclude that he was guilty beyond a reasonable doubt of committing the burglary with which he is charged.

This is not the law. We have often said that a jury may rely upon circumstantial evidence. That appears to be what the jury relied upon in this case. Viewing the evidence in the light most favorable to the verdict, the jury could have reasonably concluded from his possession of the stolen goods, his attempt to sell them in a secretive manner for much less than they were worth, from his statement that he got it at the Ranch, and from having been seen at the Ranch only hours before the burglary, that he committed the burglary in person or through accomplices.

In *State v. Carroll,* 123 N.W.2d 659 at 668 (N.D.1963), we quoted from an earlier decision of this court the principle that we believed applicable in *Carroll* and which we believe applicable today:

"4. In passing upon a motion for a new trial based on the insufficiency of the evidence, the trial court is clothed with a wide discretion, and his determination with respect to such sufficiency will not be disturbed unless there appears to have been abuse of that discretion."

In *Carroll,* we also discussed the significance of circumstantial evidence and the differences of the responsibilities of the jury as distinguished from the reviewing court.

The pertinent part thereof follows:

" 'While a case based on circumstantial evidence should be scanned with caution, the fact that the evidence is circumstantial and conflicting does not alone empower the appellate court to weigh it or determine its sufficiency, if it reasonably tends to prove the guilt of accused and fairly warrants a conviction. The question is whether there is evidence to support the verdict; and a verdict based on circumstantial evidence carries the same presumption of correctness as other verdicts, and will not be disturbed unless wholly unwarranted, even though the evidence is weak and unsatisfactory to the appellate court. The reviewing court is not required to explain the process by which the jury arrived at their determination.

" 'Where the circumstances are consistent with the hypothesis of accused's innocence as well as with that of his guilt, the jury, or the trial court trying the case without a jury, must draw the inference,

and an appellate court will not substitute its judgment for that of the jury or of the trial court. This rule should not be confused with the rule laid down for the guidance of the trial court * * * that the evidence must be of a conclusive character and must exclude every reasonable hypothesis of innocence. * * *' 24A C.J.S. Criminal Law § 1882 (1962)." *State v. Carroll, supra* at 669.

We conclude that from the evidence, parts of which we have included herein and other parts of which we have not, that the jury could very reasonably have concluded that Wilson committed the burglary, notwithstanding the testimony of the so-called alibi witnesses, in light of what we have earlier said concerning an alibi defense and the jury's responsibility for weighing the evidence and determining the credibility of the witnesses.

In a review of the evidence, it is not for us as an appellate court to substitute our opinion for that of the trial court or jury. *State v. Neset,* 216 N.W.2d 285 at 287 (N.D. 1974); *State v. Fuchs,* 219 N.W.2d 842 at 846 (N.D.1974); *State v. Erickson,* 231 N.W.2d 758 at 765 (N.D.1975).

In *Erickson,* this court, speaking through Justice Vogel, said:

"When reviewing a judgment entered upon a jury verdict, an appellate court has only a limited function. *See State v. Steele,* 211 N.W.2d 855 (N.D.1973), wherein we held, in Syllabus ¶ 14:

'It is not the function of the supreme court to substitute its judgment for that of the jury but instead only to examine the evidence presented in order to determine whether it supports the verdict and whether the defendant received a fair trial.'" *State v. Erickson, supra* at 765.

We have examined the record and we find substantial evidence to support the verdict. We conclude also that Wilson received a fair trial.

Wilson's fourth contention on appeal is the same as his fourth point in his motion for new trial which is that the verdict is not supported by substantial evidence. We believe that our analysis of the third contention covers this fourth contention and find it to be without merit.

The judgment and sentence of the district court is therefore affirmed.

VOGEL, PEDERSON, PAULSON and SAND, JJ., concur.