**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Donald KINGSLEY, Defendant and Appellant.**

**Cr. Nos. 1110–1111.**

Supreme Court of North Dakota.

March 19, 1986.

Patricia L. Burke, Asst. State's Atty., Bismarck, for plaintiff and appellee.

James J. Coles, of Bickle, Coles & Snyder, Bismarck, for defendant and appellant.

VANDE WALLE, Justice.

Donald Kingsley has filed appeals from two judgments of conviction for gross sexual imposition entered by the District Court of Burleigh County. The two appeals, each involving a single identical legal issue, were consolidated for purpose of argument and decision by this Court. We affirm both judgments of conviction.

Kingsley was charged with two counts of gross sexual imposition under Section 12.1–20–03(1)(e), N.D.C.C.:

"*12.1–20–03. Gross sexual imposition.*

"1. A person who engages in a sexual act with another, or who causes another to engage in a sexual act, is guilty of an offense if:

\*    \*    \*    \*    \*    \*

"e. He knows or has reasonable cause to believe that the other person suffers from a mental disease or defect which renders him or her incapable of understanding the nature of his or her conduct."

Kingsley was charged with separate incidents of committing gross sexual imposition under the foregoing provision against Pamela, age 25, and Sharon, age 23, during November 1984. The offenses occurred in the home which Pamela and Sharon shared as roommates.

Separate jury trials were held. At the close of the prosecution's case at each trial, Kingsley moved for dismissal of the charges on the ground that the prosecution failed to establish a prima facie case. The trial court denied the request for dismissal in each case, and judgments of conviction were entered upon jury verdicts finding Kingsley guilty on both charges.

On appeal from the two judgments of conviction, Kingsley has raised the following single issue: Whether or not the trial court erred in refusing to dismiss the charges against Kingsley for failure of the State to establish a prima facie case by not presenting competent medical testimony to establish that either victim suffered from a mental disease or defect which rendered her incapable of understanding the nature of her conduct.

■ On appeal, we will treat Kingsley's motion for dismissal in each case as a motion for judgment of acquittal under Rule 29(a), N.D.R.Crim.P. See *State v. Engebretson*, 326 N.W.2d 212 (N.D.1982). In deciding a motion for judgment of acquittal the trial court, upon reviewing the evidence most favorable to the prosecution, must deny the motion if there is substantial evidence upon which a reasonable mind could find guilt beyond a reasonable doubt. See *State v. Engebretson, supra; State v. Allen,* 237 N.W.2d 154 (N.D.1975). In the instant case, Kingsley proceeded to present evidence at each trial after the trial court denied his motion for dismissal. We have previously held that, by presenting evidence after a motion for judgment of acquittal is denied at the close of the prosecution's case in chief, the defendant permits this court to review on appeal the entire record to determine whether substantial evidence exists to sustain the verdict. *State v. Wilson*, 267 N.W.2d 550 (N.D.1978); *State v. Allen, supra.*

■ At the trial on the charge of gross sexual imposition upon Pamela, she testified that she had not met Kingsley prior to the evening of the offense. She testified that Kingsley, who had briefly met Sharon on a prior occasion, entered their home while Pamela and Sharon were visiting with a mutual friend, Todd Hamel. Pamela testified that when she went upstairs to use the bathroom Kingsley followed her

and when she exited from the bathroom Kingsley "forced" her into the bedroom where he, in Pamela's words, "started doing sexual education with me." Pamela testified that Kingsley partially pulled her pants and underpants down and that he "stuck his penis into my vagina." Although Pamela was able to relate the incident using such terms as "penis" and "vagina," which she learned from sex-education counseling, she did not know the meaning of the term "ejaculate" and she believed that pregnancy was caused "by having your period."

At the trial on the charge of gross sexual imposition upon victim Sharon, she testified that prior to the date of the offense she had met and spoke briefly with Kingsley at a fast-food restaurant. She testified that she met Kingsley a second time while she was shopping at the Kirkwood Plaza mall, where Kingsley motioned for her to "come over and talk to him for a while." After briefly talking with Kingsley, Sharon proceeded to walk to her home which is a short distance from the mall. She testified that she noticed Kingsley was following her and that she was scared but did not say anything because she did not know what to say. Sharon testified that Kingsley followed her into her home and up to her bedroom where he proceeded to lay "on top of me" and then to "put his penis inside my vagina." Sharon testified that she requested Kingsley to "please get off me." When asked whether she understood what Kingsley "was doing or why," Sharon responded, "no." Sharon testified that she did not know anything about sexual relationships between a man and a woman and that she did not understand the meaning of the words "sexual intercourse."

At both trials, Marian Sorenson, a social worker for Burleigh County Social Services who works with developmentally disabled people in the community, testified that Pamela and Sharon, who have been her clients, are both developmentally disabled with limited abilities in areas of "self direction, learning and self care." The following testimony given by Marian at the trial involving the offense against Sharon

is a concise summarization of the essence of her testimony at both trials:

"A. ... I am describing—what I am looking at is a child in a woman's body, and that she was sexually exploited. She is not capable. She might know the mechanics of the act, but would not understand all of the social implications of this relationship, and so she could be talked into anything, just anything—go through fire or whatever, without really knowing what was happening, because this is a seven-, eight-, nine-year-old girl in a woman's body."

Although Pamela and Sharon were able to express in anatomical terminology what had occurred, their testimony, together with that of social worker Marian Sorenson, quite clearly demonstrates that they were incapable of understanding or appreciating the nature of what was taking place or that they had any ability to stop or otherwise cope with the activity that was, in effect, being unilaterally perpetrated upon them. The lack of understanding is especially evident by Pamela's testimony that Kingsley "started doing sexual education with me." Sharon's lack of understanding is equally demonstrated by her testimony that she did not understand what Kingsley "was doing or why."

Expert medical testimony would have established a stronger case for the prosecution and provided additional helpful information for the juries as well as this court on appeal. Nevertheless, we believe the prosecution minimally met its burden of presenting a prima facie case on all elements of the charges against Kingsley including the element that the victims must, by reason of mental disease or defect, be incapable of understanding the nature of the conduct involved. We conclude that, under these circumstances, expert medical testimony was not required to establish a prima facie case. We conclude that there was substantial evidence upon which the jury could find guilt beyond a reasonable doubt and that the trial court did not,

therefore, err in denying Kingsley's motions for dismissal.

The judgments of conviction are affirmed.

ERICKSTAD, C.J., and LEVINE and GIERKE, JJ., concur.

LEVINE, Justice (concurring specially).

I write specially to voice a caveat to the prosecution. I have no doubt that there was substantial evidence for the jury to find that the victims did not understand the nature of the conduct involved. I share the sentiment of the majority that the State only "minimally" met its burden of establishing that this lack of understanding arose by virtue of mental disease or defect. Indeed, if our standard of review were other than that of reviewing the evidence in the light most favorable to the prosecution, a different result would have ensued.

It is well to bear in mind that there is no presumption of incompetence simply because a developmentally disabled person is receiving special services or living at a residence for the developmentally disabled. North Dakota Century Code § 25–01.2–03. Nor is a developmentally disabled person deprived of the right to "interact" with members of the opposite sex. NDCC § 25–01.2–03(3). I believe the State should, in cases like the instant one, present testimony of a medical expert on the subject of mental defect or mental disease and its effect on a particular individual's comprehension. The jury is entitled to at least that much, if not more assistance in reaching a verdict.

MESCHKE and GIERKE, JJ., concur.