STATE of North Dakota, Plaintiff
and Appellee,

v.

Duane A. SCHAEFFER, Defendant
and Appellant.

Crim. No. 890253.

Supreme Court of North Dakota.

Jan. 18, 1990.

Rodney Allen Danielson, submitted on brief, Mandan, for defendant and appellant.

Bruce B. Haskell, submitted on brief, Asst. States Atty., Bismarck, for plaintiff and appellee.

ERICKSTAD, Chief Justice.

Duane Schaeffer appeals from a judgment of conviction based upon a jury verdict finding him guilty of mistreating animals in violation of section 36–21.1–02, N.D.C.C.[1] Imposition of sentence was de-

---

1. Section 36–21.1–02, N.D.C.C., provides:
   *"Overworking or mistreating animals.*
   "1.  No person may overdrive, overload, torture, cruelly beat, neglect, or unjustifiably injure, maim, mutilate, or kill any animal, or cruelly work any animal when unfit for labor.
   "2.  No person may deprive any animal over which he has charge or control of necessary food, water, or shelter.
   "3.  No person may keep any animal in any enclosure without exercise and wholesome change of air.
   "4.  No person may abandon any animal.
   "5.  No person may allow any maimed, sick, infirm, or disabled animal of which he is the owner, or of which he has custody, to lie in any street, road, or other public place for more than three hours after notice.
   "6.  No person may willfully instigate, or in any way further, any act of cruelty to any animal or animals, or any act tending to produce such cruelty.

"7.  No person may cage any animal for public display purposes unless the display cage is constructed of solid material on three sides to protect the caged animal from the elements, and unless the horizontal dimension of each side of the cage is at least four times the length of the caged animal.  The provisions of this subsection do not apply to the North Dakota state fair association, to agricultural fair associations, to any agricultural display of caged animals by any political subdivision, or to district, regional, or national educational livestock or poultry exhibitions.  Zoos which have been approved by the health district or the governing body of the political subdivision which has jurisdiction over the zoos are exempt from the provisions of this subsection.
"8.  Repealed by S.L.1975, ch. 106, § 397."

ferred for a period of eighteen months, subject to certain conditions. We affirm.

On January 13, 1989, Deputy Sheriff Lonny Quam investigated a report that horses located at Section 144 North, Range 77, Section 5, Burleigh County, were not being fed properly. Deputy Quam observed about 25 horses at that location. The horses and land were found to be under the charge and control of the appellant, Duane Schaeffer. Deputy Quam testified that "[t]here was a few of them that were [in] very poor shape. You could see the rib cage on them, hip bones, back bones, looked in pretty bad shape." He also testified that some of the other horses were in better condition. Deputy Quam stated that he could see no feed in the pasture where the horses were located, that he saw no evidence of water in the pasture, and that he saw no evidence that people had been in the area recently. He admitted on cross-examination that tire and foot tracks could have been covered by blown snow. He further testified that he observed a dead horse in the pasture.

Dr. William Rotenberger, Assistant State Veterinarian, testified that he went to the pasture on January 14, 1989. When asked about his opinion of the cause of death of the dead horse, Dr. Rotenberger testified: "Well, professional judgment of this sort and with the extenuating circumstances with the condition of the other horses were in, it certainly appeared to be from starvation." Dr. Rotenberger testified that there was some slew hay in the pasture, but no evidence of any other feed or water. He further testified:

"[T]here was a wooden water tank with a pump on it, but the water tank had snow in it and there was no evidence of any footprints around the water tank where the horses may have been over there trying to get water. So it appeared that there was not daily basis where the hors-

es would have went over to water, otherwise they would have been there the day we were there trying to get water, and they weren't."

Dr. Rotenberger testified that he examined approximately 40 acres surrounding the location of the horses and that he did not see any other feed or water source. He also said that there were several other horses that would die if they did not receive immediate attention.

At the close of the State's case, Schaeffer's counsel moved for dismissal pursuant to Rule 29 of the North Dakota Rules of Criminal Procedure.[2] The motion for dismissal was denied by the trial court.

Schaeffer testified that the horses were watered and fed every day. He explained the condition of the water tank by stating that someone had stolen his tank heater and the arms from the pump in December of 1988. He said that he watered the horses by filling two to four rubber tubs with water, depending upon the weather conditions. He also testified that the horses "were given approximately a gallon and-a-half of grain, basically slew hay. That's about all we had in Sheridan County last year was slew hay."

Schaeffer testified that in late December of 1988 or January of 1989, some of his horses had been ill with "scours" or diarrhea. He did not call a veterinarian, but fed them whole grain and charcoal pills. When asked his opinion as to how the one horse died, Schaeffer testified that "[s]he either laid down in the soft snow or was thrown over, very likely in a fight with another horse, and she was in soft snow and she could not get herself righted up."

Schaeffer's fourteen-year-old son, Timothy, testified that he assisted his father on the weekends in feeding, counting, and making sure that the horses were alright. Leo Triebwasser, a retired farmer, testified

2. Rule 29, N.D.R.Crim.P., in relevant part, provides:

"(a) Motion Before Submission to Jury. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, information, or complaint af-ter the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without having reserved the right."

that he sold Schaeffer one hundred bales of hay in January of 1989. He testified that Schaeffer told him that the hay was for his horses. John E. Davis, Jr., a banker and rancher, testified that his bank has a security interest in the livestock of Schaeffer. He said that on January 31, 1989, he observed the horses on behalf of the bank and was satisfied with their condition. This was about two weeks after the deputy sheriff and the assistant state veterinarian saw the horses.

After the close of evidence, the jury returned a verdict of guilty of the offense of mistreating animals.

■ On appeal, Schaeffer contends that the trial court committed reversible error by denying his motion to dismiss pursuant to Rule 29(a) of the North Dakota Rules of Criminal Procedure.[3] We have previously ruled that a motion for judgment of acquittal at the close of the prosecution's case in chief preserves the issue of insufficiency of evidence for appellate review, even without a renewal of the motion at the close of all the evidence. *State v. Stevens*, 238 N.W.2d 251, 260 (N.D.1975); *State v. Allen*, 237 N.W.2d 154, 158 (N.D.1975).

■ In ruling on a motion for judgment of acquittal, the trial court must view the evidence in a light most favorable to the prosecution and assume the truth of the prosecution's evidence. *State v. Langan*, 410 N.W.2d 149, 150 (N.D.1987); *State v. Holy Bull*, 238 N.W.2d 52, 57 (N.D.1975). The trial court must deny the motion if there is substantial evidence upon which a reasonable mind could find guilt beyond a reasonable doubt. *State v. Kingsley*, 383 N.W.2d 828, 829 (N.D.1986).

■ In the instant case, the trial judge denied the motion to dismiss, stating that "[t]he State has shown the offense by at least a prima facie showing." Schaeffer then proceeded to present evidence. We have previously held that, by presenting evidence after a motion for judgment of acquittal is denied at the close of the prose-

cution's case in chief, the defendant permits this Court to review on appeal the entire record to determine whether or not substantial evidence exists to sustain the verdict. *State v. Prociv*, 417 N.W.2d 840, 842–43 (N.D.1988); *Kingsley, supra* at 829; *State v. Wilson*, 267 N.W.2d 550, 553 (N.D. 1978).

It is the duty of this Court to sustain a criminal conviction based upon a jury verdict if, upon reviewing the evidence in a light most favorable to the verdict, we determine that there is substantial evidence to support it. *State v. Frey*, 441 N.W.2d 668, 672 (N.D.1989); *State v. Ohnstad*, 359 N.W.2d 827, 834 (N.D.1984); *State v. Moe*, 151 N.W.2d 310, 313 (N.D.1967). In cases involving circumstantial evidence, our role is merely to review the record to determine if there is competent evidence from which the jury could draw an inference reasonably tending to prove guilt and warranting a conviction. *Frey, supra* at 672; *Allen, supra* at 161. After reviewing the evidence in the light most favorable to the verdict, we conclude there was competent evidence from which the jury could draw such an inference.

■ The facts established during the prosecution's case in chief provided substantial evidence upon which a reasonable mind could find guilt beyond a reasonable doubt. While Schaeffer then testified as to the reasons for the condition of the equipment and the horses, the jurors, not this Court, determine the weight and credibility to be given the testimony. *Allen, supra* at 162. As we do not substitute our judgment for theirs, we conclude that there is sufficient evidence to sustain the verdict.

Accordingly, we affirm.

VANDE WALLE, LEVINE, MESCHKE and GIERKE, JJ., concur.

**3.** For a review of the historical development of Rule 29, N.D.R.Crim.P., *see State v. Allen*, 237

N.W.2d 154 (N.D.1975).