**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Gerald A. GHYLIN, Defendant and Appellant.**

**Cr. No. 477.**

Supreme Court of North Dakota.

Oct. 10, 1974.

Thomas F. Kelsch, State's Atty., and Dennis A. Schneider, Asst. State's Atty., Burleigh County, for plaintiff and appellee.

Daniel J. Chapman, Bismarck, for defendant and appellant.

VOGEL, Judge.

The defendant was convicted of a violation of Section 39–08–01, North Dakota Century Code, prohibiting the driving of a vehicle while the driver is under the influence of intoxicating liquor.

The defendant was arrested on April 24, 1973, about eight miles north of Bismarck on Highway 83 by an officer manning a radar speed check. The officer followed the defendant about a mile and saw his car go onto the shoulder of the paved road on two occasions.

The arresting officer testified that the defendant's breath had the odor of alcoholic beverages and that the defendant did not walk in a direct line in a heel-to-toe test, but that he was able to touch his nose with his fingers after closing his eyes, putting his head back, and extending his arms to the side. The defendant was arrested at the scene after the tests were performed and was taken to the Bismarck police station for a Breathalyzer test.

Captain Hayes of the Bismarck police department administered a Breathalyzer test which resulted in a reading of 0.16 per cent alcohol by weight.

Captain Hayes testified that he had taken a course of training of 44 hours and refresher courses annually in the operation of the Breathalyzer. The courses were conducted by the State Toxicologist.

He testified that the Breathalyzer test is administered by following a checklist of procedures established by the State Toxicologist. The procedures result in three readings. The first is a reading of alcoholic content of air drawn from the room, which should and in this case did give a zero reading. The second is a reading of alcoholic content of the breath of the defendant, which gave a reading of 0.16 per cent. The third, described as a "standard test," gives a reading of a standard solution of 0.10 per cent alcohol, which test resulted in a reading of 0.10, as it should. While the State contends that this procedure constitutes proof of accuracy so the machine verifies itself, we have no proof that such a contention is scientifically accepted. See Stein v. Ohlhauser, 211 N.W.2d 737 (N.D. 1973).

When the officer began to testify as to the standard solution—that it contained 0.10 per cent alcohol and that it was supplied by the State Toxicologist—the defense objected that no foundation had been laid and that the testimony was a conclusion. The defense interrogated the officer, who testified that in testing the defendant he inserted into the machine two ampules taken from a locked receptacle in the police department, that the correct composition of the chemicals in the ampules was critical to the operation of the machine, and that he understood the ampules came from the State Toxicologist but he could not verify that, nor could he state that the chemicals used were properly compounded. The defense objected to the admission of the results of the test. The objections were ultimately overruled.

The defense likewise attacked the qualifications of the officer. As proof of his qualifications the prosecution produced a certificate stating as follows:

[GREAT SEAL]
State of North Dakota
OFFICE OF THE STATE TOXICOLOGIST
State University Station
Fargo
58102

### BREATHALYZER OPERATOR CERTIFICATE

This is to certify that EDWARD H. HAYES having pursued an approved course of instruction and successfully passed a written and practical examination in the operation of the BREATHALYZER, an instrument which I hereby certify meets the requirements of Section 39–20–07 of NDCC, for the analysis of breath to determine blood alcohol concentration, is hereby certified as a qualified operator of the BREATHALYZER.

Date of Issue      12 April 1973      [Signed]

N.G.S. Rao, Ph.D

Date of Expiration   30 April 1974   Acting State Toxicologist

On this 12th day of April, 1973, personally appeared before me, N.G.S. Rao, known to me to be the Acting State Toxicologist for the State of North Dakota, and acknowledged to me that he executed the foregoing certificate.

[Signed]
PATRICIA L. HAARSTAD
[NOTARIAL SEAL]     Notary Public, CASS COUNTY, N. DAK.
My Commission Expires MAR. 15, 1975

---

The certificate was objected to as hearsay, self-serving, and not the best evidence. This objection also was overruled, and the test results and certificate were received in evidence.

The defendant testified that he was ill from an allergy at the time of the arrest, and also was emotionally upset by an order of his superiors that he discharge one-third of the employees in his office, that he had drunk five 12-ounce cans of beer some hours before his arrest, and that he had warts on his left foot which caused him to stagger when he first put weight on his feet upon standing up. He also produced a copy of certain computations and a report he had made when he returned to his office and worked after consuming the beer, to show that he was thinking clearly prior to his driving.

The statute regulating the administration of breath tests for alcohol is Section 39–20–07, N.D.C.C., which reads as follows:

"Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor, evidence of the amount of alcohol in the person's blood at the time of the act alleged as shown by a chemical analysis of his blood, breath, saliva or urine is admissible. For the purpose of this section:

"1. A person having, at that time, five-hundredths of one percent or less by weight of alcohol in his blood is presumed not to be under the influence of intoxicating liquor;

"2. Evidence that there was at that time more than five-hundredths of one percent and less than ten-hundredths of one percent by weight of alcohol in the person's blood is relevant evidence, but it is not to be given prima facie effect in indicating whether the person was under the influence of intoxicating liquor;

"3. A person having, at that time, ten-hundredths of one percent or more by weight of alcohol in his blood shall be presumed to be under the influence of intoxicating liquor;

"4. Percent by weight of alcohol in the blood shall be based upon grams of alcohol per one hundred cubic centimeters of blood.

"5. The results of such chemical analysis shall be received in evidence when it is shown that the test was fairly administered, provided that a test of a person's blood, urine, breath or other bodily substance and the result thereof is further shown to have been performed according to methods and/or with devices approved by the state toxicologist and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist. The state toxicologist is authorized to approve satisfactory techniques, devices and methods of chemical analysis, and to determine and certify the qualifications of individuals to conduct such analysis. The state toxicologist may appoint, train, certify, and supervise field inspectors of breath testing equipment and its operation, and the inspectors shall report the findings of any inspection to the state toxicologist for appropriate action."

The defendant raises four issues on the appeal:

"I. What foundation is needed for the introduction of the results of the Breathalyzer test?

"II. Did counsel commit prejudicial misconduct by commenting to the jury that the test showed that Defendant had a reading 'sixty percent greater than permitted by law'?

"III. Did the Court err in its instruction to the jury with regard to the effect of the presumption of intoxication created by the Breathalyzer test?

"IV. Was the evidence sufficient to sustain the verdict and, in particular, may a conviction be sustained where virtually the only evidence to sustain the conviction is the test?"

This action was tried and the appeal was filed prior to the release of our opinions in State v. Salhus, 220 N.W.2d 852 (N.D.1974), and State v. Fuchs, 219 N.W.2d 842 (N.D. 1974). Our decision is controlled largely by those decisions.

■■ The certificate quoted above was offered in evidence to prove (1) that the Breathalyzer has been approved by the State Toxicologist as a device to measure the alcoholic content of breath and (2) that the officer is qualified to administer such tests. The State asserts that it is not necessary to prove that the specific Breathalyzer machine used to test the defendant has been approved by the State Toxicologist. We hold that such proof is necessary as to the specific machine as well as to the type of machine, namely, the Breathalyzer.

■ We further hold that the certificate is not admissible, over a hearsay objection, to prove the qualifications of the officer, the approval of Breathalyzer machines in general, or the approval of the specific Breathalyzer machine used on the defendant. The certificate is hearsay, and no attempt was made to bring it within any of the recognized exceptions to the hearsay rule.

"We are of the opinion that these exhibits were erroneously received. The trial court himself, in his memorandum, opinion, states that there probably was error in their reception, but that it was not prejudicial. The exhibits were written by one not a party to the action. He

was not then under oath. There was no opportunity for cross-examination. They clearly were subject to the hearsay rule, which Professor Wigmore defines as—

" 'That rule which prohibits the use of a person's assertion, as equivalent to testimony of the fact asserted, unless the assertor is brought to testify in court on the stand, where he may be probed and cross-examined as to the grounds of his assertion and of his qualifications to make it.' See Wigmore on Evidence, 3rd Edition, Vol. 5, Sections 1361 and 1364.

"The rule excluding hearsay applies to written as well as oral statements." Grand Forks Building & Development Co. v. Implement Dealers Mutual Fire Insurance Co., 75 N.D. 618, 31 N.W.2d 495, at 497 (1948).

See also Leake v. Hagert, 175 N.W.2d 675 (N.D.1970).

The fact that the writing contains a written acknowledgment does not make it any less objectionable as hearsay. 29 Am. Jur.2d, Evidence, Sec. 499, p. 557; 31A C.J.S. Evidence § 194, p. 561.

■ We suggest, as we did in *Salhus, supra,* that the records of the State Toxicologist could easily be made admissible without requiring his personal presence at every prosecution for a violation of Section 39–20–07, N.D.C.C., by having him maintain an official record of types of machines approved, dates and results of periodic tests of specific machines, giving serial number and other identification, and a register of officers who have qualified as operators of the machines. Certified copies of such records could be offered in evidence under Rule 44(a), North Dakota Rules of Civil Procedure, or upon compliance with Section 31–09–10, N.D.C.C., relating to proof of official documents, or upon compliance with Section 31–09–11, N.D.C.C., relating to proof of official reports or findings of fact. Certified copies of official records of the results of tests of a Breathalyzer were held admissible under similar statutes in State v. Woodward, 1 Or.App. 338, 462 P.2d 685 (1969).

■ We further hold, as we did in State v. Salhus, *supra,* that the foundation for the introduction in evidence of the results of the Breathalyzer test was insufficient. The statute requires proof that the test is fairly administered. We believe, as we indicated in *Salhus,* that this provision requires proof at the very least that the ampules used in performing the test are what they purport to be *and* have been approved, by spot-checking or analysis by the State Toxicologist or other competent authority; that the machine is of a kind approved by the State Toxicologist; that the specific machine used to make the test has been, within the not-too-distant past, examined and approved by the State Toxicologist; that the "known solution" is what it purports to be, namely, a 0.10 per cent solution of alcohol and water; and that the officer conducting the test has the necessary qualifications. Some of these requirements could be met by introduction in evidence of certified copies of records of the State Toxicologist, as mentioned above. As to the ampules and "known solution," some proof of the chain of custody from the State Toxicologist to the officer making the test would be required. These requirements are neither novel nor onerous. They simply demand compliance with the ordinary rules of evidence. Other jurisdictions impose much the same requirements. French v. State, 484 S.W.2d 716 (Tex.1972); State v. Baker, 56 Wash.2d 846, 355 P.2d 806 (1960).

■ The defendant further contends that the prosecuting attorney made a statement to the jury which was so prejudicial as to require reversal, in saying that "point sixteen was sixty per cent more than the law allows." This was objected to on the ground that the statute creates only a presumption, and not an absolute limit at 0.10 or any other particular level of blood alcohol. The court responded:

" . . . The Court is going to instruct The Jury on the effect of these percentages at the conclusion of the argument, and I think that will adequately cover it; and The Jury can compare what [the

prosecutor] said to what I have instructed them, and if what he says does not bear up under the law, guide yourselves accordingly."

The statement of the prosecuting attorney was misleading and incomplete, but whether it was prejudicial and whether the comment of the court removed the prejudice, if any, we need not decide, since there will be a new trial and we assume the question will not again arise.

■ The defendant alleges that the court erred in instructing the jury as to the statutory presumption that a driver is under the influence of intoxicating liquor if his blood contains ten-hundredths of one per cent or more by weight of alcohol.

The court's instruction is as follows:

"For this purpose, a person having, at the time [of the act of driving], ten-hundredths of one percent or more by weight of alcohol in his blood shall be presumed to be under the influence of intoxicating liquor. So, if the evidence establishes beyond a reasonable doubt that the amount, by weight of alcohol in the Defendant's blood, was ten-hundredths of one per cent or more at the time, you should find that the Defendant was under the influence of intoxicating liquor, unless you have a reasonable doubt arising from all the evidence that he was not in fact under the influence of intoxicat-

ing liquor at the time of the alleged offense."

The defendant claims that the effect of the instruction given is to shift the burden of proof to the defendant, so as to require him to prove that he was not under the influence of intoxicating liquor. We do not so read the instruction. We believe that it correctly advises the jury that it may find that the presumption is overcome by any evidence before the jury, whether introduced by the prosecution or the defense.

■ We have held that error occurred in the admission of the Breathalyzer evidence. Without this evidence, the proof of the commission of the offense charged was slight and conflicting. Even if the proof had been ample for conviction, that circumstance would not alter the requirement of a fair trial. State v. Haakenson, 213 N.W.2d 394 (N.D.1973); State v. Schlittenhardt, 147 N.W.2d 118 (N.D.1966). The error was not harmless.

Reversed and remanded for a new trial.

ERICKSTAD, C. J., and JOHNSON, KNUDSON and PAULSON, JJ., concur.