**STATE of North Dakota, Plaintiff and Appellee,**

v.

**John Michael OLSON, Defendant and Appellant.**

**Cr. No. 544.**

Supreme Court of North Dakota.

July 29, 1976.

Mervin Nordeng, State's Atty., Fargo, for plaintiff and appellee; argued by Joseph A. Turman, Asst. State's Atty.

Schuster, Ramlo & McGuire, Fargo, for defendant and appellant; argued by Michael O. McGuire, Fargo.

ERICKSTAD, Chief Justice.

This case arises from a judgment of the Cass County Court with Increased Jurisdiction finding John Michael Olson guilty of operating a motor vehicle while under the influence of intoxicating liquor. Olson was arrested by Officer James Metheny of the North Dakota Highway Patrol at 1:20 a. m. on December 18, 1974, after Metheny's suspicions were aroused by Olson's failure to dim his lights, and a jerking motion to the driver's right when Metheny flicked his bright lights on. Metheny then followed Olson's Corvette for a few blocks. At a stop sign in the City of Fargo, the Corvette sped away, and Metheny pursued it for three and a half blocks.

The car was stopped without further incident, the suspect staggered as he alighted from his vehicle, and the officer noted a strong odor of alcohol about the suspect, so Metheny arrested him. At the jail Metheny noticed that the suspect's eyes were extremely bloodshot and that he leaned constantly on a counter at the jail.

Olson's contentions are two-fold: (1) that in-court identification of the defendant is a necessary element of the crime charged and that the trial court's deferred ruling on his motion for judgment of acquittal after the State had rested its case was erroneous and in violation of the mandate of Rule 29(a), N.D.R.Crim.P.; and (2) that the trial judge's prejudice and bias, together with the erroneous admission of certain highly prejudicial testimony, denied him a fair trial.

The action was heard on May 7, 1975, and the judgment of guilt was signed on October 27, 1975. During the interim between the judgment and the argument on appeal, we decided the matter of *State v. Allen.* It was duly published at 237 N.W.2d 154 (N.D.1975). In *Allen* we noted the mandatory nature of Rule 29(a), N.D.R. Crim.P., set forth the standard to be used in jury trials in ruling upon a motion for judgment of acquittal, and quoted *United States v. Guinn,* 454 F.2d 29, 33 (5th Cir. 1972), *cert. denied,* 407 U.S. 911, 92 S.Ct. 2437, 32 L.Ed.2d 685, to the effect that a trial judge may not defer ruling on such a motion and thereby "allow sufficient evidence to be supplied by the defense or by the prosecution on rebuttal." If, however, when the prosecution rests, the evidence is sufficient to meet the standard, then any error in failing to rule promptly is harmless.

At the trial of this case the court, upon being urged by Olson that the State had not proved by in-court identification that Olson was the suspect arrested and that this failure required a judgment of acquittal, allowed the State to recall the arresting officer, who thereupon specifically identified Olson as the person arrested. After Olson's motion for judgment of acquittal was denied, he did not call any witnesses and did not petition the trial court for a new trial.

We believe that sufficient evidence of Olson's identity existed before the trial court allowed the State to re-open its case and that the error in failing to rule promptly on the motion is harmless. In so finding we are aided by a Pennsylvania decision in which the court decided that the evidence of the defendant's identity was sufficient to sustain a jury verdict:

"* * * As bearing on the weight of proof of identity of name, the courts, including our own, have adopted the principle that where there is no contrary proof offered by the party concerned or by the defendant in a criminal cause, a comparatively small amount of proof in addition to identity of name constitutes sufficient evidence to submit to a jury to whose good judgment the decision is en-trusted. The minimum required must necessarily depend on the facts of each case and the general law applicable to criminal causes." *Commonwealth v. Middleton,* 134 Pa.Super. 573, 4 A.2d 533, 536 (1939).

*See generally* 9 Wigmore, Evidence § 2529 (1940).

In this case the action was begun when Officer Metheny prepared the uniform traffic complaint and summons, as prescribed in Section 29–05–31, N.D.C.C. The defendant's name and address were entered as "John M. Olson, 1215 6th St. So., Fargo, N. D." Olson apparently consented to appear at the county courthouse at 9:00 a. m. on September 20, 1974. At that appearance he posted bail in the amount of five hundred dollars ($500).

Before the motion for judgment of acquittal the arresting officer and another highway patrolman, who drove Olson's vehicle to the courthouse, made frequent references to the defendant. In response to a question whether he had "an opportunity to observe the defendant, John M. Olson," Officer Metheny declared, "I did." He described approaching the vehicle and seeing "two people in the car, a lady was in there also, her name I do not know; and there was—then I arrested the defendant . . . ."

During cross-examination, Olson's counsel asked Metheny to observe "the defendant's eyes" to determine if they appeared bloodshot. Metheny observed that they were.

Officer Burud also testified concerning his observations of "the defendant." We must conclude that these officers meant what they said, that the person they had observed was the defendant. This conclusion, added to the inference of identity arising from the same name and Olson's appearance with counsel, was sufficient identification of Olson. This is not one of those instances "when there are no other connecting or corroborating facts or circumstances [tending to establish the defendant's identity, so that] the [in-court] identification becomes critical . . . ." *United States v. Musquiz,* 445 F.2d 963, 965 (5th Cir. 1971).

Olson furthermore alleges that the trial court demonstrated bias and prejudice against him to such an extent that he has been denied a fair trial. He argues that the trial court assumed the role of advocate in its interrogation of the State's witnesses and that the court allowed inadmissible and highly prejudicial evidence to be heard.

Rule 614 of the Federal Rules of Evidence (hereinafter F.R.Ev.) (1975) allows the trial court to interrogate witnesses, whether called by a party or by the court itself, and provides, "Objections to the calling of witnesses by the court or to interrogation by it may be made at the time or at the next available opportunity when the jury is not present." There was no jury in this case.

■ The Advisory Committee's note explains that a trial court's authority to interrogate witnesses is well-established, that the manner and extent of such interrogation is not susceptible of formulation in a rule, that the "authority is, of course, abused when the judge abandons his proper role and assumes that of advocate," and that appellate courts are not precluded from reversing a trial court's decision for abuse of that authority. There is no automatic objection feature in these circumstances, so counsel must object to the trial court's actions "in apt time to afford the opportunity to take possible corrective measures." *See United States v. Doran,* 483 F.2d 369, 374 (1st Cir. 1973), *cert. denied,* 416 U.S. 906, 94 S.Ct. 1612, 40 L.Ed.2d 111. The rule and commentary are consistent with our perception of the trial court's role.

To evaluate the role of the trial court in this case, we are aided by a summary of cases in 3 Weinstein & Berger, Evidence ¶ 614[03], at 614–13 and 614–14 (1975):

"Factors that an appellate court may consider in evaluating the impact of the judge's questioning are whether the witnesses' testimony needed clarification, whether the witnesses were unusually hesitant and in need of assurance, whether the court used leading questions, whether the court interfered with cross-

examination, whether the court's interruptions favored one side exclusively, whether the court instructed the jury to arrive at their own conclusions, whether the parties were being adequately represented, and whether an objection to the questioning was made. * * *" [Footnotes omitted.]

We have carefully examined the transcript in this case and determined the following. The trial court interrupted the proceedings five times. Two of those interruptions simply clarified testimony. One interruption was to urge the witness to respond to a question. Another was to hasten Olson's cross-examination of an officer involved in the arrest; the trial court noted that he had to preside at a jury trial, and Olson's counsel indicated his assent to the request to expedite the cross-examination.

Only once did the trial court's interruptions go beyond mere clarification. The officer had testified to his observations of the defendant at the county jail, and the court asked if Olson's speech pattern had been impaired. The witness could not recall whether Olson's speech was slurred or otherwise unusual.

■ Olson objected eight times during the trial; the State objected twice. All objections were expressly or impliedly overruled. After one objection for lack of a proper foundation to draw a conclusion as to whether Olson was intoxicated, the trial judge himself asked the necessary preliminary questions. We find no abuse of discretion in the trial court's questioning to establish the proper foundation.

■ We do not believe that these instances demonstrate that the trial court assumed the role of the prosecutor in Olson's case. It is apparent from the record that the trial court was subject to demands on his time from other actions, but we do not believe that his desire for haste indicates either such bias and prejudice against the defendant or such a cursory treatment of the merits that Olson was thereby denied a fair trial.

■ We reiterate our declaration in *State v. Weippert,* 237 N.W.2d 1, 5 (N.D. 1975), that the Code of Judicial Conduct, Canon 3 A(3), requires a trial judge to be patient, dignified, and courteous to all with whom he deals in the course of his official responsibilities. While the the courts are charged with seeking truth and doing justice, a trial judge should be aware that the appearance of justice is diminished when he substitutes a three-piece suit of advocacy for his robe of impartiality.

There remains Olson's assertion that the trial court allowed inadmissible and highly prejudicial evidence to be heard. That situation arose when an officer testified during cross-examination that he had read a report concerning another offense with which Olson had been charged. On redirect examination the state's attorney asked the nature of that charge, and Olson's attorney objected. The state's attorney justified the question as arising from the same incident, and the trial court allowed the witness to answer that the other charge was possession of marijuana.

Olson's counsel renewed his objection and moved that the testimony be stricken because of its highly prejudicial nature, a motion in which the state's attorney joined. The trial court responded with the statement, "Deny this motion and proceed."

■ Rule 404(b), F.R.Ev. (1975), prohibits the admission of evidence of other crimes, wrongs, or acts "to prove the character of a person in order to show that he acted in conformity therewith," unless the evidence relates to "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." None of those exceptions are applicable here where the only charge being tried was driving while under the influence of intoxicating liquor and the testimony related to possession of marijuana. Thus, even though the charges apparently arose from the same incident, testimony relating to the possession charge was clearly irrelevant and inadmissible. *See United States v. Clemons,* 503 F.2d 486, 489 (8th Cir. 1974). As to the admissibility of prior acts or crimes, see our recent decision in *State v. Stevens,* 238 N.W.2d 251, 257–259 (N.D.1975).

■ Having determined that the testimony was inadmissible, we must decide whether its prejudicial nature denied Olson a fair trial. Our review of the record convinces us that there is substantial evidence to support the conviction. The arresting officer noted that Olson smelled strongly of alcohol and that he staggered when he alighted from his car. Olson's eyes were bloodshot, he leaned on a counter at the jail as if to support himself, and both highway patrolmen who observed Olson concluded that he was intoxicated.

■ If the issue were simply that of insufficiency of the evidence, we would affirm the trial court's judgment. We believe, however, for the reasons that follow, that justice requires a new trial in this case.[1]

■ Standing alone, the trial court's action in allowing the irrelevant, highly prej-

---

1. Olson contends that, because he did not ask the trial court for a new trial, "this Court must acquit the Defendant and cannot order a new trial for the Defendant where no motion for a new trial has been made." He cites us to *United States v. Musquiz, supra,* 445 F.2d 963, and to *United States v. Apollo,* 476 F.2d 156 (5th Cir. 1973).

   In *Musquiz* the court noted that the question of whether an accused should "be retried when his conviction has been reversed for *lack of evidence to support the verdict* is a question of some uncertainty," turning in part on whether the defendant has asked for a new trial. [Emphasis added.] 445 F.2d at 966. In *Apollo* the same court determined that since there was no

alternative motion for a new trial based on insufficiency of the evidence, a conviction "*reversed on this ground* would require that the indictment be dismissed." [Emphasis added.] 476 F.2d at 158, n.1.

   The basis for our reversal is that Olson has been denied a fair trial, not that the evidence is insufficient to sustain the conviction. By raising the issues of bias and prejudice and of prejudicial error, which he is allowed to do under the touchstones set forth in *State v. Haakenson,* 213 N.W.2d 394 (N.D.1973), Olson is deemed to have consented to a new trial. The only other construction that we could engage in is that Olson has waived those issues on appeal.

udicial testimony to be heard would be insufficient to overcome the presumption that a judge as trier of fact will separate such evidence from his consideration of the defendant's guilt or innocence. The state's attorney refers us to a comment by the trial judge at the close of the case where he noted the undisputed testimony and conclusions of the two highway patrolmen that Olson was intoxicated. The State relies upon this statement to show that the objectionable testimony was disregarded and that its admission was thus harmless error under Rule 52(a), N.D.R.Crim.P.

The trial court, however, went on to observe, "It looks like the case is thin, but I'm going to—I'll give it the best I can." It was nearly six months after hearing that the final order of conviction was signed. The record in this case includes the uniform complaint and summons and promise to appear. A breathalyzer test result of .20 percent was specified on that document. The test result was not offered into evidence,

apparently because the State did not believe it could lay a proper foundation for the result because of our decision in *State v. Ghylin*, 222 N.W.2d 864 (N.D.1974).[2] While the writing that indicates the result of the Breathalyzer test differs from that of the remainder of the uniform complaint and summons, we assume that the information was before the trial judge.

■ Considering his attitude toward the objectionable testimony relating to the other charge against Olson, the presence of the unadmitted information relating to the Breathalyzer test result, his own observation that "the case is thin," the long delay between the trial and the final order of conviction, and the colloquy between Olson's attorney and the trial judge (see n.2, *supra*), we are unable to conclude in this case that the trial court reached its decision untainted by the irrelevant and prejudicial testimony and by the unadmitted, but completely available, Breathalyzer test result. *See State v. Stevens, supra,* 238 N.W.2d

---

2. After testimony indicated that a test had been given to Olson and no result was offered into evidence, Olson attempted to persuade the trial court that a presumption arose that the result would have been exculpatory. In response, the trial court made inquiries of its own to the witness to determine that the reason the test result had not been offered was that the state toxicologist had not properly certified the machine used in analyzing the subject's breath alcohol.

It was at this point that Olson's counsel and the trial judge clashed most strongly. The trial judge reminded Mr. McGuire that the foundation problem had been referred to earlier and declared,

" * * * Although they gave the test, you're saying they should go through the mechanics even when the Court, you, and the State is aware of all of these problems. I don't.

"MR. McGUIRE: That's exactly it, Your Honor. If we were in front of a jury—

"THE COURT: We're not in front of the—

"MR. McGUIRE: I'm going to analogize on that. The Court is a neutral party in the case just as a jury is. * * *

"THE COURT: Even in the record I brought it out, and *the State* did this only for the purpose of—and *didn't offer more only for the purpose of time.* * * * I think that that [presumption] is overcome . . . [but] *if you want them to do this, I'll give them an opportunity to reopen the case.*

"MR. McGUIRE: *They have rested, Your Honor.*

"THE COURT: *Well, I'm going to allow them to reopen the case * * * to* cure the rest of the objections that you've made. . . . *If you'd recall officer—otherwise, I'm going to do it on my own motion.*

"MR. OVERBOE: Yes, Your Honor. *We recall Officer Metheny.*" [Emphasis added.]

Subsequently, the trial judge in response to an objection by Mr. McGuire reiterated, "I'm not going to let a case ride or fall on some technicality when it can be cured." He also questioned Officer Metheny as to the Breathalyzer test and, referring to *Ghylin, supra,* summarized as follows:

"THE COURT: And so the gentlemen and the State's Attorney and the highway patrol having read this law and knowing that you can't comply with it, are not going to try *to embarrass the Court by having the Court sustain an objection that you know the defense will make*; is that it?

"THE WITNESS: Yes." [Emphasis added.]

We are troubled that an attorney's zealous pursuit of his client's interests by making a valid objection is viewed as *an embarrassment* to the trial court. While we can condone a trial court's desire for expeditious behavior, especially where the questions are repetitive, the trial court's reaction in this instance must be regarded as a significant factor in our ruling upon the fairness of the proceeding.

251, and *State v. Allen, supra,* 237 N.W.2d 154.

Olson's right to a fair trial having been breached, we reverse the judgment of conviction and remand for a new trial.

PEDERSON and PAULSON, JJ., concur.

SAND, Judge (concurring in part and dissenting in part).

I agree with the conclusions and holding of the majority opinion regarding the deferred ruling on the motion for judgment of acquittal, and the identity issue as stated in syllabus 1. I also agree with syllabus 2, 3 and 4, but I dissent specifically from syllabus 6.

The bare word in the record does not disclose if the judge showed facial expressions, tonal qualities, stares, smiles, sneers, raised eyebrows, or such other behavior, if any, from which it could be determined that the judge had a prejudicial attitude or mind on the case.

While the trial judge's conduct may not have been exemplary in this case, I do not believe we should compound such action by punishing society in setting the guilty person free or giving him a retrial where there was sufficient admissible evidence to sustain the conviction. Such procedure does not serve as a deterrent, in my view, any more than does the exclusionary rule which rests merely upon an unsupported assumption that it will serve as a deterrent. See discussion of the United States Supreme Court in *Stone, Warden v. Powell,* ——— U.S. ———, 96 S.Ct. 3037, 48 L.Ed.2d ———, decided 6 July 1976, and specifically the concurring opinion by Chief Justice Burger.

Assumption and surmise are not enough and should not be permitted. This was a trial before the court without a jury. It was a bench trial. No jury was present to be affected by the judge's expressions, if in fact there were any outward expressions by the judge from which his attitude could be determined.

I assume the defendant agreed to a trial to the court without a jury.

In a nonjury trial, in my view, the trial judge, as the trier of facts in the search for the truth, has a right to inquire into certain relevant admissible matter not adequately developed by counsel which needs clarification or explanation so as to provide a better understanding for the court of the ultimate facts upon which it will be required to make its findings of fact and decision.[1]

I also believe that where the judge is required, and is capable of determining the admissibility of evidence, he is also capable in his deliberations of distinguishing between admissible and inadmissible evidence. It does not follow that merely because evidence was admitted that it was used by the court. It would have been advisable for the judge to have announced or made a record

---

1. In *United States v. Stoehr,* D.C.Pa., 100 F.Supp. 143, *affirmed,* C.A., 196 F.2d 276, 33 A.L.R.2d 836, *cert. denied Stoehr v. United States,* 344 U.S. 826, 73 S.Ct. 28, 97 L.Ed. 643 (1951), the court said:

"The trial judge is not a mere moderator, but a governor of the trial for the purpose of assuring its proper conduct. It is his duty and responsibility to control the conduct of the trial, to facilitate its orderly progress, and clear the path of petty obstructions to the end that the evidence shall be presented honestly, expeditiously, and in such form as to be readily and intelligently understood not only by the court but by the jury. To insure that this is done the trial judge has no more important duty than to clarify the testimony of witnesses, to confine such testimony to relevant matters and to ask questions for the purpose of developing the facts so that all the truth is brought out and that the jury may arrive at a true verdict to the end that justice may be attained by the parties. He must do so in a non-prejudicial manner with circumspection and caution. The extent to which he shall intervene for this purpose is largely a matter of discretion. ' * * * That he is free, not only to give his impressions of the witnesses, but to point out the rational implications of the evidence, is too well settled in federal trials to admit of any dispute.' " *United States v. Stoehr,* 100 F.Supp. 152. I am of the opinion that the foregoing, which was said in reference to a trial by jury, is equally, if not more, applicable to a bench trial. In making this remark it is not intended that the statement concerning the judge's commenting on the evidence to the jury applies to North Dakota jury cases which are governed by Rule 51(a), NDRCivP, and Rule 30(a), NDRCrimP.

that certain evidence will not be or was not relied upon in his decision.

If our courts were governed by Federal Criminal Rule No. 23(c), which provides for a general finding and, upon request, requires a specific finding, instead of our Rule which merely provides that the court "shall make a general finding of guilty or not guilty," the question of whether or not inadmissible evidence was used would, in all probability, not be before us.

We have held in civil cases that it is better for a trial judge in a trial without a jury to admit evidence which is clearly not inadmissible than to reject it. See *Beck v. Lind*, 235 N.W.2d 239 (N.D.1975); *Jahner v. Jacob*, 233 N.W.2d 791 (N.D.1975); *Schuh v. Allery*, 210 N.W.2d 96 (N.D.1973); *Builders Steel Co. v. Commissioner of Internal Revenue*, 179 F.2d 377, 379 (8th Cir. 1950). Even though in a criminal case the finding of guilty is required to be beyond a reasonable doubt, there is otherwise no substantial difference in the fact-finding process between civil and criminal cases.

The majority opinion refers to the lengthy interval between completion of the trial and the announcement of the decision as a partial basis for its conclusion. Such interval, in my view, militates equally, if not more favorably, to the assumption that the court took a greater period of time in carefully deliberating to offset any prejudice it may have had than to the assumption that the decision is faulty, prejudicial, or influenced by inadmissible evidence. The court in effect admitted that the case was difficult by the statement: "It looks like the case is thin, but I'm going to—I'll give it the best I can." Merely because the case was difficult is no basis for reversing the decision.

In this instance, where the evidence was sufficient to sustain the conviction but merely because some evidence which would have been refused if the trial were to a jury was admitted and came before the court, in my view does not warrant the reversing and the granting of a new trial.

I would sustain the conviction and affirm the trial court.

VOGEL, Justice (concurring specially).

While I agree with what Justice Sand has written except the third paragraph and the last three paragraphs, I concur in the majority opinion. The intervention of the trial judge into the proceeding, the fact that he himself brought out inadmissible evidence, and the fact that he refused to grant a motion to strike inadmissible evidence even when both sides agreed to do so, persuade me to concur in the remand for a new trial. If this case involved only the admission, in a trial to the court, of inadmissible evidence adduced by one or both attorneys, I would vote to affirm on the principle stated in *Schuh v. Allery*, 210 N.W.2d 96 (N.D.1973), and subsequent cases on the same point. It is the active participation of the judge in injecting prejudicial material and refusing to strike it which distinguishes this case, in my view. This indicates that the trial was, in fact, unfair.