STATE of North Dakota,
Plaintiff-Appellee,

v.

Raymond A. SCHNEIDER,
Defendant-Appellant.

Cr. No. 641.

Supreme Court of North Dakota.

Sept. 29, 1978.

Baer, Asbridge & Robb, Bismarck, for defendant and appellant; argued by Darold A. Asbridge, Bismarck.

Richard L. Schnell, State's Atty., and Marvin M. Hager, Asst. State's Atty., Mandan, for plaintiff and appellee; argued by Marvin M. Hager.

PAULSON, Justice.

The appellant, Raymond A. Schneider [hereinafter Schneider], has appealed to this court from the judgment of conviction in the Morton County Court With Increased Jurisdiction of the crime of driving a motor vehicle while under the influence of intoxicating liquor. Schneider was arrested and brought to trial after he allegedly drove an automobile while under the influence of intoxicating liquor on Old Highway 10, approximately one mile west of Glen Ullin. He was convicted by a jury. We affirm.

North Dakota Highway Patrolman Ronald A. Ruther testified that he was westbound on Old Highway 10 west of Glen Ullin on June 4, 1977, at approximately 1:30 a. m., when he observed Schneider's car traveling east. Patrolman Ruther clocked Schneider's car on the radar equipment on his patrol car as traveling at a speed of 64 miles per hour in a 55 mile-per-hour zone. When the two cars passed on the highway, the patrolman obtained a second reading of 27 miles per hour and saw Schneider swerve onto the right shoulder of the road. Patrolman Ruther then turned the patrol car around, followed Schneider's car, saw Schneider's car cross the highway's centerline three times, and he then ordered Schneider to bring his vehicle to a stop.

Patrolman Ruther testified that he then walked up to Schneider's stopped vehicle and asked Schneider, who was seated behind the wheel, for his driver's license. At that time the officer smelled the odor of alcohol on Schneider's breath. When Schneider got out of his car, Ruther noticed

that Schneider's walk appeared to be unsteady; that Schneider's eyes were red and bloodshot; and that his pupils were not constricted.

Schneider became argumentative and did not produce his driver's license immediately, so Patrolman Ruther requested assistance from Morton County Deputy Sheriff LeRoy Boschee. Shortly after Deputy Sheriff Boschee arrived at the scene, Schneider produced his driver's license. Patrolman Ruther then arrested Schneider for driving while under the influence of intoxicating liquor and advised him of his *Miranda* rights. Schneider was then taken to the Glen Ullin police station for further intoxication testing and was again advised of his *Miranda* rights. Patrolman Ruther then asked Schneider "Were you operating a motor vehicle?" to which Schneider replied "I will remain silent".

Schneider was then requested to perform two physical field sobriety tests in order to determine whether or not he was under the influence of intoxicating liquor. Patrolman Ruther observed that Schneider, in performing the heel-to-toe test (consisting of placing the heel of one foot against the big toe of the other foot while walking in a straight line) "stepped slightly out of line— slightly lost his balance". In the finger-to-nose test (consisting of extending both arms sideways and then, one arm at a time, touching the nose with the index finger of each hand), Schneider hesitated before performing the test. He correctly touched his nose with his index fingers on his first two attempts but failed on his third attempt when he touched his lip with one index finger.

Deputy Sheriff Boschee, who was certified to conduct breathalyzer tests, then administered the breathalyzer test to Schneider, according to the Approved Method to Conduct Breath Test with Breathalyzer [hereinafter may be referred to as Approved Method] as authorized by the state toxicologist. The breathalyzer test indicated that Schneider's blood alcohol level was .14%.

Schneider introduced testimony that he had consumed only three seven-ounce beers during that night; that he had swerved over the highway centerline because of the rough condition of the road; that his eyes were bloodshot because he had worked on road construction on the previous day, which had been very windy and dusty; that he was very tired because he had awakened at 6:00 a. m. on the day prior to his arrest, had worked all day at his Montana job site, and, after work, had then driven 200 miles toward his home; that he believed that he had done pretty well on the field sobriety tests despite the fact that he was tired; that Deputy Sheriff Boschee also believed Schneider had done pretty well on the field sobriety tests; that several of Schneider's friends did not believe he had been under the influence of intoxicating liquor; and that the reason it had taken him some time to remove his driver's license from his wallet was because his wallet also contained several other documents.

The case was tried to a jury on February 2, 1978. Prior to the presentation of the State's case, Schneider's attorney objected *in camera* to the introduction into evidence of the Approved Method to Conduct Breath Test with Breathalyzer. Schneider's counsel argued that because the Approved Method had not been filed with the clerk of the Morton County District Court prior to Schneider's arrest, the foundational requirements of § 39–20–07(5) of the North Dakota Century Code were not met and a copy of the Approved Method was not admissible. The trial judge overruled this objection and ruled that the Approved Method was admissible. At trial, Schneider's counsel renewed his objection to the admission into evidence of the Approved Method (State's Exhibit No. 7), and was again overruled.

At the trial, Schneider's counsel made no objection to Patrolman Ruther's testimony that Schneider, after being advised of his *Miranda* rights, had stated that he would remain silent when asked if he had been operating a motor vehicle.

After conviction, this appeal was brought on Schneider's behalf. Schneider raises the following issues for review by this court:

1. Was it reversible error to receive into evidence State's Exhibit No. 7 (Approved Method to conduct Breath Test with Breathalyzer) over defense counsel's objection that this exhibit had not been filed with the clerk of the district court at the time the offense occurred?

2. Did prejudicial error occur when the investigating officer testified that he advised Schneider of his *Miranda* rights and that Schneider responded that he would remain silent, when asked a question concerning an element of the crime with which he was charged, said testimony amounting to an improper comment on Schneider's right to remain silent? In addition, can this court review such an allegation of error when no objection was made to said testimony at the time of trial?

### ADMISSIBILITY OF BREATHALYZER RESULTS

The sole issue regarding the admissibility of the Approved Method to Conduct Breath Test with Breathalyzer (State's Exhibit No. 7) is whether or not the Approved Method had to be filed with the clerk of the Morton County District Court at the time of Schneider's arrest in order to be admitted in evidence. This case, which considers the question of when filing must occur, is one of first impression before our court.

Subsection 5 of § 39–20–07, N.D.C.C., provides:

"*Interpretation of chemical tests.*— Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor, evidence of the amount of alcohol in the person's blood at the time of the act alleged as shown by a chemical analysis of his blood, breath, saliva or urine is admissible. For the purpose of this section:

.        .        .        .        .

"5. The results of such chemical analysis shall be received in evidence when it is shown that the test was fairly administered, provided that a test of a person's blood, urine, breath, or other bodily substance and the result thereof is further shown to have been performed according to the methods and/or with devices approved by the state toxicologist and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist. The state toxicologist is authorized to approve satisfactory techniques, devices, and methods of chemical analysis and to determine the qualifications of individuals to conduct such analysis, and shall issue a certificate to all qualified operators who shall exhibit the certificate upon demand by the person requested to take the chemical test. The state toxicologist may appoint, train, certify, and supervise field inspectors of breath testing equipment and its operation, and the inspectors shall report the findings of any inspection to the state toxicologist for appropriate action. Upon approval of the methods and/or devices and techniques required to perform such tests and the persons qualified to administer them, the state toxicologist shall prepare and file written record of such approval with the clerk of the district court in each county within the state which shall include:

a. A quarterly register of the specific testing devices currently approved including serial number, location, and the date and results of last inspection.

b. A quarterly register of currently qualified and certified operators of said devices stating the date of certification and its expiration.

c. The operational check list and forms prescribing the methods and techniques currently approved by the state toxicologist in using such devices during the administration of the tests.

Copies of the above records certified by the clerk of the district court shall be admitted as prima facie evidence of the matters stated therein."

■ *State v. Ghylin,* 248 N.W.2d 825 (N.D.1976); *State v. Ghylin,* 222 N.W.2d 864 (N.D.1974), and *State v. Salhus,* 220 N.W.2d 852 (N.D.1974), require the State to show, before the test results can be admitted into evidence, that a breathalyzer test was "fairly administered" in compliance with § 39–20–07, N.D.C.C. Fair administration of the breathalyzer test requires, at the minimum, a showing that the test was "performed according to the methods and/or with devices approved by the state toxicologist and by an individual possessing a certificate of qualification to administer the test". § 39–20–07(5), N.D.C.C. *See Ghylin, supra* 248 N.W.2d at 829; *Ghylin, supra* 222 N.W.2d at 869; and *Salhus, supra* 220 N.W.2d at 857.

■ The foundational requirements needed to show that a breathalyzer test was "fairly administered" and that the results, therefore, are admissible may be met by testimony of the state toxicologist. In his absence, such proof may be made by the introduction of certified copies of records filed by the state toxicologist with the clerk of the district court relating to the approval of devices and methods, and the certification of test operators. § 39–20–07(5), N.D.C.C. *See also Ghylin, supra* 222 N.W.2d at 869; *Salhus, supra* 220 N.W.2d at 857; and *State v. Fuchs,* 219 N.W.2d 842, 847 (N.D. 1974).

■ Once these records have been filed with the clerk of the district court, certified copies of the records "shall be admitted as prima facie evidence of the matters stated therein" to prove that the breathalyzer test was fairly administered. § 39–20–07(5), N.D.C.C.

The state toxicologist authorized the use of the Approved Method to Conduct Breath Test with Breathalyzer on June 3, 1976; Schneider was arrested on June 4, 1977; the Approved Method to Conduct Breath Test with Breathalyzer was filed with the clerk of the Morton County District Court on October 14, 1977; and a certified copy of the Approved Method (State's Exhibit No. 7) was admitted into evidence at Schneider's trial on February 2, 1978.

■ The state toxicologist's failure to file the Approved Method prior to Schneider's arrest was not a foundational defect that would result in State's Exhibit No. 7 being held inadmissible. Section 39–20–07(5), N.D.C.C., requires that the Approved Method be filed before a certified copy thereof can be admitted as prima facie evidence of the validity of the breathalyzer test. It does not require that the Approved Method be filed at the time of a defendant's arrest. Lack of filing at the time of arrest has no bearing on the Approved Method's admissibility as long as it was authorized at the time of Schneider's arrest. However, if the Approved Method had not been filed before trial, the exhibit would not have been admissible.

■ We hold that the trial court did not err when it received State's Exhibit No. 7 into evidence. The Approved Method had been authorized by the state toxicologist prior to Schneider's arrest and had been filed with and certified by the clerk of the Morton County District Court before Schneider's trial. Therefore, State's Exhibit No. 7 was admissible as prima facie evidence that the breathalyzer test had been "fairly administered".

TESTIMONY OF OFFICER RUTHER

Schneider next raises for our review the issue as to whether or not it was error for the trial judge to admit Patrolman Ruther's testimony that he had twice advised Schneider of his *Miranda* rights, that he had asked Schneider if he had been operating a motor vehicle, and that Schneider had responded "I will remain silent". Schneider's counsel made no objection at trial, nor

did Schneider's counsel make a motion to dismiss on the ground of a mistrial.

Schneider contends that this testimony, in response to a question asked by the prosecutor, constituted an impermissible comment on Schneider's right to remain silent and was therefore reversible error.

In *Miranda v. Arizona,* 384 U.S. 436, 468, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966), the United States Supreme Court commented in Footnote 37, in pertinent part:

"In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. *The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation.* [Citations omitted.]" [Emphasis added.]

Also cited in *State v. Bragg,* 221 N.W.2d 793, 800 (N.D.1974).

■ We find that Schneider's response "I will remain silent" was an invocation of his Fifth Amendment privilege to remain silent. We further find that Patrolman Ruther's testimony, in response to a question from the prosecutor, that Schneider had invoked his Fifth Amendment privilege was an improper comment on Schneider's right to remain silent and was constitutional error which may be reviewed on appeal even though not objected to at the time of trial.

■ We must review Rule 52 of the North Dakota Rules of Criminal Procedure to determine if the constitutional error resulting from the patrolman's testimony was reversible error. Rule 52, N.D.R.Crim.P., provides:

"*RULE 52—Harmless Error and Obvious Error*

"*(a) Harmless error.* Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

"*(b) Obvious error.* Obvious errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

Rule 52, N.D.R.Crim.P., applies only when an error has been made by the trial court. If the trial court has erred,

". . . three types of error may be assigned for review by the appellate court. These are (1) harmless error or error not prejudicial to the defendant; (2) reversible error or error that was prejudicial and to which objection was made in the trial court; and (3) obvious error or error so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time." Comments to Rule 52, N.D.R. Crim.P. [See Wright, Federal Practice and Procedure, Criminal § 851 (1969)].

In this case, no objection was made at trial to the patrolman's testimony. We must determine whether the error was "(1) harmless error" or "(3) obvious error".

In *State v. Carmody,* 253 N.W.2d 415 (N.D.1977), we reaffirmed *State v. Hilling,* 219 N.W.2d 164, 172 (N.D.1974), in which this court adopted the harmless error test enunciated in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), *reh. den.* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967). In *Chapman, supra* 386 U.S. at 24, 87 S.Ct. 824, 828, it was held that federal constitutional errors do not automatically require reversal if it is shown that they were harmless, and "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt". *See Carmody, supra* 253 N.W.2d at 418; *Hilling, supra* 219 N.W.2d at 172; and Comments to Rule 52, N.D.R.Crim.P.

■ The beneficiary of a constitutional error has the heavy burden of proving "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained". *Chapman, supra* 386 U.S. at 24, 87 S.Ct. at 828. *See Carmody, supra* 253 N.W.2d at 418.

■ In the instant case, the introduction of Patrolman Ruther's testimony that Schneider invoked his Fifth Amendment privilege to remain silent would constitute reversible error under Rule 52(b), N.D.R.

Crim.P., unless we could conclude that the error was harmless beyond a reasonable doubt.

■ To determine the effect of the error on Schneider's constitutional rights we must consider "the entire record and the probable effect of the actions alleged to be error in light of all the evidence". *State v. Allen,* 237 N.W.2d 154, 162 (N.D.1975), citing *State v. Johnson,* 231 N.W.2d 180, 185 (N.D.1975); and Comments to Rule 52, N.D.R.Crim.P.

■ Although an appellate court must review the entire record to determine whether or not an error is harmless, the review is not to be used as a quest for error. *Bihn v. United States,* 328 U.S. 633, 638, 66 S.Ct. 1172, 90 L.Ed. 1484 (1946). In *Black v. United States,* 309 F.2d 331, 342 (8th Cir. 1962), *cert. den.* 372 U.S. 934, 83 S.Ct. 880, 9 L.Ed.2d 765 (1963), quoting *Johnson v. United States,* 291 F.2d 150, 156 (8th Cir. 1961), the Eighth Circuit Court of Appeals stated that the court has "repeatedly held that the plain error[1] rule should be applied with caution and should be invoked only to avoid a miscarriage of justice [footnote added]". The Comments to Rule 52(b), N.D.R. Crim.P., also state that:

". . . the power to notice obvious error, whether at the request of counsel or on the court's own motion, is one the courts should exercise cautiously and only in exceptional circumstances . . . where a serious injustice has been done to the defendant."

■ After considering the entire record of the case, we conclude that Patrolman Ruther's testimony regarding Schneider's assertion of his right to remain silent was harmless error beyond a reasonable doubt.

Schneider, after his arrest, asserted his right to remain silent when asked if he had been operating a motor vehicle. Patrolman Ruther's testimony to this effect, although an impermissible comment on Schneider's right to remain silent, was harmless error because Schneider testified at trial that he had, in fact, been operating the motor vehicle.

In *Carmody, supra* 253 N.W.2d at 418–419, we held that the prosecutor's cross-examination regarding Carmody's right to remain silent was harmless error because the questions and answers did not suggest that he had a duty to testify; Carmody's counsel made no objection; and the prosecutor did not imply guilt from Carmody's silence.

In the instant case, the testimony did not suggest that Schneider was required to answer the question; Schneider's counsel made no objection to the testimony; Schneider's counsel made no motion to dismiss on the ground of a mistrial; the prosecutor did not imply guilt from Schneider's silence; and Schneider did, in fact, testify at trial and did admit that he had been operating the motor vehicle prior to his arrest. Under the circumstances, no obvious error occurred which prejudiced Schneider.

In *Booton v. Hanauer,* 541 F.2d 296, 299 (1st Cir. 1976), the court held that any "inference as might have been drawn by the jury from the inadmissible evidence was inconsequential, in light of the overwhelming, identical inference drawn from admissible evidence, namely, petitioner's earlier answers". In the instant case, we hold that even if the inadmissible testimony of Patrolman Ruther created an inference of Schneider's guilt, the inference was inconsequential and harmless in light of the fact that Schneider answered the question at trial and admitted the element of the crime that he had been operating the motor vehicle prior to his arrest.

The judgment of conviction is affirmed.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.

---

1. Rule 52, N.D.R.Crim.P., "differs from the Federal Rule only in the substitution of the word 'obvious' error for 'plain' error." Comments to Rule 52, N.D.R.Crim.P.