Herman D. BRANDT, Petitioner
and Appellant,

v.

NORTH DAKOTA STATE HIGHWAY
COMMISSIONER, Respondent
and Appellee.

Civ. No. 11353.

Supreme Court of North Dakota.

July 28, 1987.

Hjellum, Weiss, Nerison, Jukkala, Wright & Paulson, Jamestown, for petitioner and appellant; argued by James A. Wright.

Robert E. Lane, Asst. Atty. Gen., North Dakota State Highway Dept., Bismarck, for respondent and appellee.

MESCHKE, Justice.

Herman D. Brandt appeals from a district court judgment upholding suspension of his driver's license. We affirm.

Brandt was arrested for driving while under the influence ("DUI") and given an Intoxilyzer test at the Cooperstown police station. The test showed a blood alcohol level of 0.17 percent. As a result, Brandt's license was taken and he was given a temporary permit.

After a hearing the State Highway Commissioner suspended Brandt's license for 364 days. Brandt appealed to the district court, which affirmed the Commissioner's decision. Brandt has further appealed to this court.

The lone issue is whether the hearing officer erred in receiving into evidence the results of Brandt's Intoxilyzer test. Brandt contends that the Intoxilyzer results were unreliable and inadmissible because that Intoxilyzer had not been inspected within one year and because its location had been changed since its last inspection.

Intoxilyzer test results are admissible in administrative proceedings pursuant to Section 39–20–07, N.D.C.C.:

"*39–20–07. Interpretation of chemical tests.* Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed

by any person while driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor, drugs, or a combination thereof, evidence of the amount of alcohol, drugs, or a combination thereof in the person's blood at the time of the act alleged as shown by a chemical analysis of the blood, breath, saliva, or urine is admissible. For the purpose of this section:

\* \* \* \* \* \*

"5. The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the state toxicologist, and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist. The state toxicologist is authorized to approve satisfactory devices and methods of chemical analysis and determine the qualifications of individuals to conduct such analysis, and shall issue a certificate to all qualified operators who shall exhibit the certificate upon demand of the person requested to take the chemical test.

"6. The state toxicologist may appoint, train, certify, and supervise field inspectors of breath testing equipment and its operation, and the inspectors shall report the findings of any inspection to the state toxicologist for appropriate action. *Upon approval of the methods or devices, or both, required to perform the tests* and the persons qualified to administer them, *the state toxicologist shall prepare and file written record of the approval with the highway commissioner and the clerk of the district court in each county and shall include in the record:*

"a. *An annual register of the specific testing devices currently approved, including serial number, location, and the date and results of last inspection.*

\* \* \* \* \* \*

"The material filed under this section may be supplemented when the state toxicologist determines it to be necessary, and any supplemental material has the same force and effect as the material that it supplements.

"7. Copies of the records referred to in subsections 5 and 6, certified by the clerk of the district court, must be admitted as prima facie evidence of the matters stated in the records." [Emphasis added.]

The Intoxilyzer had been inspected on May 13, 1985, and was listed in the annual register of approved chemical testing devices issued by the State Toxicologist on July 2, 1985. Brandt was tested on May 18, 1986. The officer who tested him testified that the Intoxilyzer was inspected on the next day, May 19, 1986, and was found to be in proper working order.[1]

Brandt contends that Section 39–20–07(6)(a) requires an annual inspection of each breath-testing device, and the test results are inadmissible in evidence if no inspection was made within a 365 day period before the test. We deem it unnecessary to decide whether the inspection of the Intoxilyzer 370 days after its last inspection complied with the statute because the Commissioner demonstrated through other evidence that Brandt's test was fairly administered.

The requirement that the State Toxicologist issue regular listings of approved devices and qualified operators was enacted in 1975, apparently in response to our decisions in *State v. Ghylin,* 222 N.W.2d 864 (N.D.1974) and *State v. Salhus,* 220 N.W.2d 852 (N.D.1974), and to ease requirements for admissibility of chemical test results in DUI cases. Under Section 39–20–07, certified copies of the operational

---

1. Brandt argues that the officer was not competent to testify about the inspection of the Intoxilyzer because the officer did not do the inspecting. Brandt did not object to this testimony at the hearing and has therefore failed to preserve the issue for appeal. *See, e.g., Besette v. Enderlin School District No. 22,* 310 N.W.2d 759, 762 (N.D.1981).

check list and of records showing that the device was approved and that the operator was qualified are admissible to prove fair administration of the test.

The statute does not say that this is the only way that the Commissioner may prove fair administration of the test. Even if the requirements of Section 39–20–07(6) are not met, chemical test results can be used as evidence if the proponent supplies other proof that the test was fairly administered. The Commissioner did so in this case. The officer who tested Brandt testified, without objection, that the Intoxilyzer was inspected on the day after Brandt's test and was found to be operating properly. Brandt did not offer any evidence to show that lack of inspection of the Intoxilyzer within 365 days before his test affected the accuracy of the results. He did not contest the fact that the Intoxilyzer was inspected one day after his test and was then operating properly. We conclude that the Commissioner demonstrated that the test was fairly administered. Thus, the test results were properly received in evidence.[2]

■ Brandt also contends that foundation was lacking because the test was performed in Cooperstown while the annual register listed the location of this Intoxilyzer as the "State Toxicology Lab" in Fargo. Section 39–20–07(6)(a) requires that the annual register record the location of each testing device currently approved. Brandt argues that results of a test are inadmissible where it is conducted on an Intoxilyzer located at a place different from its stated location on the annual register. However, the annual register issued by the State Toxicologist on July 2, 1985, noted: "Indicates the location of the device at the time of inspection and does not restrict its use at other locations." Brandt offered no evidence to show that moving the Intoxilyzer affected its operation. This one was operating properly when inspected one day after Brandt's test. We conclude that, absent evidence of an effect upon the machine's reliability, the discrepancy between the location listed in the annual register and the machine's actual location did not make the test results inadmissible.

The judgment of the district court is affirmed.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.

---

**2.** Brandt also asserts that conducting his test 370 days after the Intoxilyzer's last inspection did not meet the standard set out in *State v. Ghylin,* 222 N.W.2d 864 (N.D.1974). In *Ghylin* we held that the Commissioner must show "that the specific machine used to make the test has been, within the not-too-distant past, examined and approved by the State Toxicologist." *Id.* at 869.

*Ghylin* was decided before the Legislature required the State Toxicologist to issue regular listings of approved devices, qualified operators, and approved methods of operation. The legislative history of the 1975 amendments to Section 39–20–07, which added those provisions, suggests that the court's decisions in *Ghylin* and *State v. Salhus,* 220 N.W.2d 852 (N.D.1974), prompted the legislative action. The Legislature, through the 1975 amendments, has provided simplified requirements of proof for chemical test results. These amendments were intended to remedy the problems noted in *Ghylin.*

Although we recently discussed the *Ghylin* requirement that the device be tested "within the not-too-distant past," *see Berger v. State Highway Commissioner,* 394 N.W.2d 678, 689 (N.D.1986), we did not intend to perpetuate *Ghylin* as a separate standard. Rather, *Berger* is consistent with application of the statutory requirements.